**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Douglas CURRY, Appellee.**

Superior Court of Pennsylvania.

Submitted Jan. 3, 2006.

Filed May 12, 2006.

Michael W. Streily, Deputy District Attorney, Pittsburgh, for Com., appellant.

Charles M. Schwartz, Allison Park, for appellee.

BEFORE: TODD, McCAFFERY, and JOHNSON, JJ.

OPINION BY McCAFFERY, J.:

¶ 1 In this matter, the Commonwealth is appealing from the trial court's grant of suppression in the underlying criminal case which involves gun charges against Appellee, Douglas Curry. Specifically, the Commonwealth asks us to determine whether the trial court erred in granting Curry's suppression motion based on its finding that parole agents did not have reasonable suspicion upon which to base their search of an apartment in which Curry was staying, which search resulted in the discovery of a firearm. After careful review of the applicable statutory authority and relevant case law, we reverse the order of suppression and remand for further proceedings.

¶ 2 In January 2003, Parole Agent Cieselski determined that Curry, one of his charges, had absconded from supervision. Cieselski entered Curry's information into the NCIC (National Crime Information Center), resulting in a warrant being issued for Curry's arrest. On January 13th, Cieselski asked his supervisor, Larry Ludwig, to accompany him to an address at which Cieselski believed Curry was residing. Cieselski and Ludwig arrived at a high-rise apartment complex in the East End area of Pittsburgh at approximately 8:00 a.m. With them were three additional employees from the Pennsylvania Board of Probation and Parole, two of whom were parole agents, and the other was a supervisor, like Ludwig. The security guard at the complex informed the agents that Curry was staying in Unit 206. The guard accompanied the men to the unit, knocked on the door and announced that "parole agents are here looking for Douglas." (Notes of Testimony, Suppression Hearing, 11/16/04, at 15). Nicole Harris, the resident of the unit, opened the door and the agents entered the apartment. The agents discovered Curry hiding in the bathroom and promptly arrested him.

¶ 3 The apartment was a one-room unit with a bathroom and kitchen area. The single, main room contained nothing but a mattress on the floor, a bureau standing next to the mattress, and a table on the other side of the bureau. While the agents were placing Curry under arrest, Ludwig stood in the main room and observed a crack pipe lying on the floor next to the mattress and bureau. Ludwig recovered the pipe, opened the top drawer in the bureau, and discovered ammunition shells. In the bottom drawer, he found a .45 caliber revolver. As a result of these discoveries, Curry was charged with being a felon in possession of a gun. *See* 18 Pa.C.S.A. § 6105, Persons Not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms.

¶ 4 Prior to trial, Curry filed a motion to suppress the gun, asserting that, among other things, there was neither consent to

nor probable cause for the search. The court held a hearing on the matter, and Supervisor Ludwig testified to events as set forth above. Following the suppression hearing, the Commonwealth filed proposed findings of fact and conclusions of law, arguing that Curry's diminished expectation of privacy as a parolee, combined with the applicable statute, 61 P.S. § 331.27a, validated the search and seizure. The trial court disagreed, and granted the motion to suppress. The Commonwealth filed the instant appeal under Pa.R.A.P. 311(a), raising a single issue:

> Whether the trial court erred in granting suppression?

(Commonwealth's Brief at 4).[1]

¶ 5 Our standard of review in an appeal from an order granting suppression is well-settled:

> [W]e consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. We must first ascertain whether the record supports the factual findings of the suppression court, and then determine the reasonableness of the inferences and legal conclusions drawn therefrom. The suppression court's factual findings are binding on us and we may reverse only if the legal conclusions drawn therefrom are erroneous. *Commonwealth v. Rosas*, 875 A.2d 341, 346 (Pa.Super.2005) (citations and quotations omitted).

*Commonwealth v. Conrad*, 892 A.2d 826, 828 (Pa.Super.2006).

¶ 6 In its brief, the Commonwealth insists that Ludwig's plain-view observation of the crack pipe gave him reasonable suspicion to search for further parole violations under § 331.27a. (Commonwealth's Brief at 7). The trial court, however, did not address the issue in the context of the statute. In fact, the court erroneously believed that there was no statute that governed the issue at hand:

> The issue then becomes whether Ludwig's observation of contraband in plain view was sufficient to allow the parole agents to search the dresser drawers without a search warrant.

In the leading case of [*Commonwealth*] *v. [Pickron]Edwards*, [535 Pa. 241,] 634 A.2d 1093 (Pa.1993), parole officers arrived at parolee's apartment with an arrest warrant. After being admitted by [parolee's] mother for the limited purpose of searching for her, the officers opened a closet door and uncovered a cutting agent for heroin. Subsequently, they expanded their search to other areas of the apartment uncovering evidence of illegal narcotics, which included a plastic bag containing white powder, and arrested [parolee] when she entered the residence.

In reversing the Superior Court and upholding the trial court, Chief Justice Nix stated as follows:

---

1. Curry has not filed an Appellee's brief. The record contains a letter from his attorney, who explains that he has attempted to contact Curry numerous times at his last known address, all without success. In addition, counsel asserts that he has tried to call Curry by telephone at seven (7) different numbers, but again, none of his efforts was successful. Lacking input from Curry, counsel decided to "tak[e] no action on [Curry's] behalf ... in this pending appeal." (Letter from Curry's Counsel, dated 11/17/05, at 2). In light of Curry's failure to file a brief, we "accept as undisputed the statement of questions involved and the statement of the case as presented by [A]ppellant, and we look to the opinion of the trial court and the record to determine the validity of [A]ppellant's claims." *Commonwealth v. Pappas*, 845 A.2d 829, 835 (Pa.Super.), *appeal denied*, 580 Pa. 712, 862 A.2d 1254 (2004).

"We do not have a statute or regulation which allows or governs the performance of warrant less [sic] searches based upon reasonable suspicion or probable cause."

Since [*Pickron*] did not contain a statutory or regulatory framework nor an agreement by [parolee] consenting to the search, the Court in [*Pickron*] held that the Fourth Amendment prohibited the warrantless search of the parolee's residence. In the instant case, there is no statute authorizing the search nor an agreement [sic] consenting to the search, as well.... Consequently, [Curry's] suppression motion was granted.

(Trial Court Opinion, dated September 12, 2005, at 3–4).

¶ 7 We begin our analysis by noting that 61 P.S. § 331.27a, **Searches by State Parole Agents**, was enacted in 1995 and "filled the gap" noted by the *Pickron* Court in 1993. The statute specifically grants authority to parole agents to conduct personal searches and property searches of parolees without a warrant and without probable cause. The law provides, in pertinent part:

(a) State parole agents are in a supervisory relationship with their offenders. The purpose of this supervision is to assist the offenders in their rehabilitation and reassimilation into the community and to protect the public.

(b) State parole agents are authorized to search the person and property of State offenders in accordance with the provisions of this section. Nothing in this section shall be construed to permit searches or seizures in violation of the Constitution of the United States or section 8 of Article I of the Constitution of Pennsylvania.

(c) No violation of this section shall constitute an independent ground for suppression of evidence in any probation/parole or criminal proceeding.

(d)(1) A personal search of an offender may be conducted by any agent:

(i) if there is a reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision;

(ii) when an offender is transported or taken into custody; or

(iii) upon an offender entering or leaving the securing enclosure of a correctional institution, jail or detention facility.

(2) A property search may be conducted by any agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.

(3) Prior approval of a supervisor shall be obtained for a property search absent exigent circumstances. No prior approval shall be required for a personal search.

\*      \*      \*      \*      \*      \*

(6) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:

(i) The observations of agents.

(ii) Information provided by others.

(iii) The activities of the offender.

(iv) Information provided by the offender.

(v) The experience of agents with the offender.

(vi) The experience of agents in similar circumstances.

(vii) The prior criminal and supervisory history of the offender.

(viii) The need to verify compliance with the conditions of supervision.

61 P.S. § 331.27a.

¶ 8 Subsequent cases interpreting the statute have explained its rationale. Because "the very assumption of the institution" of parole is that the parolee is "more likely than the ordinary citizen to violate the law," the agents need not have probable cause to search a parolee or his property; instead, reasonable suspicion is sufficient to authorize a search. *Commonwealth v. Moore*, 805 A.2d 616, 619 (Pa.Super.2002).[2] Essentially, parolees agree to "endure warrantless searches" based only on reasonable suspicion in exchange for their early release from prison. *Commonwealth v. Appleby*, 856 A.2d 191, 195 (Pa.Super.2004).

¶ 9 We conclude that § 331.27a is directly applicable in this case. The Commonwealth specifically relied on it in opposing suppression, but the trial court made no mention of it, instead relying on case law that predated the statute. This clearly was error. We proceed, then, to determine whether the search at issue was valid under the applicable law.

¶ 10 In *Commonwealth v. Edwards*, 874 A.2d 1192 (Pa.Super.2005), a panel of this Court considered whether a particular property search satisfied the requirements of § 331.27b.[3] In that case, police had received an unverified tip that the parolee, Wayne Edwards, was residing at a certain address and selling drugs from that location. When the agents arrived, they saw Edwards in front of the residence and they also noticed a contractor working on the front door of the property. Edwards told the agents that the house was owned by a friend and that he was present only to let the contractor inside. The contractor corroborated Edwards's explanation. The agents then noticed a pager sitting inside the front door. Aware that Edwards was not permitted to possess a pager under the terms of his parole, the agents entered the house and observed mail addressed to Edwards on a coffee table. After Edwards refused to consent to a search of the house, the agents contacted their supervisors for permission to conduct a search of the property. The ensuing search of the bedroom yielded crack cocaine, marijuana, drug paraphernalia, and several personal items tying Edwards to the residence. As a result, Edwards was charged with various drug offenses.

¶ 11 In affirming the trial court's grant of suppression in *Edwards*, this Court determined that the search was not supported by reasonable suspicion, as required by § 331.27a, but only by "speculation." *Id.* at 1197. The Court noted that the tip the agents had received was unverified; that there was a "vouched-for explanation" for Edwards's presence at the residence; and that the pager could not be linked to Edwards.[4] *Id.* at 1196–97.

---

2. *Moore* involved the authority of county probation and parole officers under 61 P.S. § 331.27b, but the standard for both state parole and county probation and parole is the same: "[A] parolee and a probationer have limited Fourth Amendment rights because of a diminished expectation of privacy.... [T]he requirement that a parole [or probation] officer obtain a warrant based on probable cause before conducting a search does not apply." *Moore, supra* at 620 (citation omitted).

3. The *Edwards* Court considered § 331.27b, which governs the authority of county probation and parole agents. The Court specifically addressed § 331.27b(d)(2), the language of which is identical to the statutory provision at issue here, that is, § 331.27a(d)(2).

4. The *Edwards* Court noted that the pager sat inside the doorway, only four feet away from the contractor, who was working on the front door of the home. Further, the Court rea-

¶ 12 The facts in the case *sub judice* are far more compelling than those in *Edwards*. According to the findings of the trial court as recited in its opinion, the parole agents and supervisors acted properly in seeking out Curry at the complex. Curry had failed to report for parole supervision, and a warrant had been issued for his arrest. The agents first verified Curry's presence with the security guard at the complex, who escorted them to the appropriate apartment. The agents were granted entry into Unit 206 by its resident, Ms. Harris, after the security guard announced the agents' presence.[5] Curry was discovered hiding in the bathroom of the one-room apartment. During Curry's arrest, Supervisor Ludwig observed, in plain view, evidence of criminal activity, *i.e.,* drug paraphernalia. This observation clearly gave Ludwig reasonable suspicion to believe that the "property in the possession of or under the control of [Curry] contain[ed] contraband or other evidence of violations of the conditions of supervision." *See* 61 P.S. § 331.27a(d)(2). Based on that reasonable suspicion, Ludwig searched the bureau that stood near the contraband and immediately discovered ammunition and a firearm.

¶ 13 In view of all the circumstances surrounding the search and seizure, and in light of the clear direction set out in § 331.27a, we conclude that Ludwig acted properly here. He possessed reasonable suspicion to conduct a property search of the one-room apartment in which Curry was staying because Ludwig observed, in plain view, evidence that Curry was en-

gaged in criminal activity inside the apartment. The trial court erred in failing to analyze this case under § 331.27a. Having completed the necessary analysis under § 331.27a ourselves, we conclude that suppression was unwarranted.

¶ 14 Based on all of the foregoing reasons, we hold that the trial court erred in granting Curry's suppression motion, and we reverse.

¶ 15 Order granting suppression reversed; matter remanded for further proceedings. Jurisdiction relinquished.

---

soned, even if the agents were entitled to presume the pager belonged to Edwards, its presence did not tend to prove that Edwards was living at the house. *Id.* at 1197.

5. The trial court did not find that the entry into the house was improper. Rather, the trial court apparently found the agents' con-

duct proper up to the time Ludwig observed the crack pipe. The court framed the issue as follows: "The issue then becomes whether Ludwig's observation of contraband in plain view was sufficient to allow the parole agents to search the dresser drawers without a search warrant." (Trial Court Opinion at 3).