J-S07039-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROYCE BRIAN CARTER | |
| Appellant | No. 1046 MDA 2014 |

Appeal from the Judgment of Sentence March 14, 2014
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0005618-2012

BEFORE:  BENDER, P.J.E., OLSON, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED APRIL 22, 2015**

Royce Brian Carter appeals the judgment of sentence entered March 14, 2014, in the Dauphin County Court of Common Pleas.  Carter was sentenced to a mandatory minimum term of 60 to 120 months' imprisonment following his non-jury conviction of possession with intent to deliver ("PWID") cocaine and possession of drug paraphernalia.[1]  On appeal, Carter challenges the trial court's denial of his motion to suppress evidence recovered during a vehicle stop, as well as the weight of the evidence supporting his convictions.  Although we conclude the issues raised on appeal are meritless, for the reasons set forth below, we are, nevertheless,

_____

[1] 35 P.S. §§ 780-113(a)(30) and (a)(32).

constrained to vacate the judgment of sentence and remand for resentencing.

Carter was arrested on September 4, 2012, after a search of his vehicle by State Parole Officer George Baird ("PO Baird") revealed more than 25 ounces of cocaine. The facts underlying the vehicle stop and Carter's subsequent arrest are as follows. On September 4, 2012, Carter was on state parole for a prior PWID conviction. Detective Corey Dickerson, of the Dauphin County Drug Task Force, learned from a confidential informant ("CI") that Carter was dealing drugs. The CI arranged to purchase one ounce of crack cocaine from Carter for $1,400.00. Detective Dickerson supplied the CI with the buy money, and drove the CI to the meeting location. The CI turned over the funds to Carter who told the CI he had to go get the drugs, and he was going to get another ounce for himself. After Carter left in his vehicle, officers from the Drug Task Force followed him to a housing project, and observed him enter a residence, then return to his vehicle and leave the area.

Detective Dickerson, who was working in plain clothes in an unmarked vehicle, relayed information to uniformed Officer Joshua Hammer, of the Harrisburg Police Street Crimes Unit, that Carter committed two traffic violations, specifically he failed to use a turn signal and had illegally tinted windows. Officer Hammer, who was in uniform and driving a marked

vehicle, proceeded to conduct a traffic stop of Carter's vehicle shortly thereafter.[2]  After confirming that Carter had no outstanding warrants or license suspensions, Officer Hammer issued Carter a warning for the violations and told him he was free to leave.

In the meantime, Officer Darrin Bates, also of the Street Crime Unit, arrived at the vehicle stop to provide back-up to Officer Hammer.  PO Baird was on patrol with Officer Bates that evening.  The trial court summarized PO Baird's testimony at the suppression hearing as follows:

> PO Baird testified that he had been patrolling with Officer Bates on the evening of the arrest.  Baird stated that he was familiar with [Carter] because [Carter's] PO, Georgia Latshaw, mentioned in an earlier meeting that she had received information [Carter] had been dealing drugs.  PO Baird approached [Carter] after Officer Hammer ended the traffic stop with him because it was an opportunity to make a contact with a person on parole.  Baird stated that prior to the encounter, he had no knowledge of the ongoing drug investigation involving Officer Dickerson.
>
> PO Baird described his encounter with [Carter].  He stated that he knew [Carter] had been stopped for an illegal window tint and had been given a verbal warning by Officer Hammer.  [Carter] told Baird that he was in the area because he had dropped off a co-worker at the Park Apartments, but he could not provide the co-worker's name.  [Carter] also said that he did not have anything illegal on him and consented to a search of his person which was conducted without incident.  [Carter had $140.00 in cash on his person.]  Baird stated that he noticed [Carter] had bloodshot eyes and "significant" pupils so he asked if he was on drugs to which [Carter] replied that he doesn't

_____

[2]  Detective Dickerson stated he passed the information on to Officer Hammer because he was in plain clothes and he wanted to maintain the confidentiality of his CI's identity.  N.T., 6/25/2013, at 19-20.

smoke weed. Baird testified that, since his eyes indicated [Carter] was under the influence of drugs or alcohol, he decided to question him about whether he had anything in the car that should not be there based on his status as a parolee. [Carter] refused consent to search the car. Baird said [Carter] started pacing, throwing up his hands and repeating that it wasn't his car which Baird characterized as "flipping out." During Baird's interaction with [Carter] he did not attempt to flee, nor did he hide or discard any potential contraband. PO Baird stated that at the time of the stop, he did not have any information regarding any known parole violations. Baird did not alert the police officers of suspicion of DUI.

PO Baird proceeded to search the vehicle, found crack cocaine in the front center console, reported the findings to Officer Bates who secured the drugs and made the arrest.

Trial Court Opinion, 11/18/2014, at 7-8 (record citations omitted).

Testing of the narcotics recovered from Carter's vehicle revealed 26.6 grams of cocaine. Carter was subsequently charged with PWID and possession of drug paraphernalia. On January 24, 2013, Carter filed a pretrial motion to suppress the evidence recovered during PO Baird's search of Carter's person and vehicle. Although the trial court initially denied the motion without first conducting a hearing, the court subsequently granted Carter's motion for reconsideration and conducted a suppression hearing on June 25, 2013. Thereafter, on October 8, 2013, the court, once again, denied Carter's motion.

The case proceeded to a non-jury trial on January 10, 2014, at which time Carter and the Commonwealth agreed to incorporate the testimony presented at the suppression hearing. On January 24, 2014, the trial court entered a verdict of guilty on both charges. Carter was sentenced on March

14, 2014, to a mandatory minimum term[3] of 60 to 120 months' imprisonment for his conviction of PWID and a concurrent term of six to 12 months' imprisonment for possession of paraphernalia. Carter filed a timely post-sentence motion challenging the weight of the evidence, and seeking modification of his sentence. In addition, counsel, who had been retained for trial, filed a motion to withdraw. The trial court initially denied counsel's petition to withdraw until after the disposition of Carter's post-sentence motion. Thereafter, on May 21, 2014, the trial court entered an order denying Carter's post-sentence motion and granting counsel's motion to withdraw. This timely appeal followed.[4]

In his first issue, Carter challenges the trial court's denial of his motion to suppress the cocaine recovered during the warrantless search of his vehicle. He argues that PO Baird did not have reasonable suspicion to conduct a search of either his person or his vehicle. Further, Carter contends the search of his vehicle was unlawful because there were no

---

[3] Pursuant to 18 Pa.C.S. § 7508, the trial court imposed a mandatory five years' imprisonment for Carter's possession of more than 10 grams but less than 100 grams of cocaine. 18 Pa.C.S. § 7508(a)(3)(ii) (five year mandatory minimum when defendant has prior PWID conviction).

[4] Carter filed a *pro se* notice of appeal, and attached a certificate of indigency. On July 15, 2014, this Court remanded the appeal to the trial court for appointment of counsel. Subsequently, the court appointed counsel and ordered him to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Counsel complied with the court's directive and filed a concise statement on August 27, 2014.

exigent circumstances present, and PO Baird failed to obtain prior approval for the search from his supervisor.

Our review of a trial court's denial of a pretrial motion to suppress evidence is well-settled:

> In an appeal from the denial of a motion to suppress our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, we may reverse only if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Colon*, 31 A.3d 309, 312 (Pa. Super. 2011) (quotation omitted), *appeal denied*, 42 A.3d 1058 (Pa. 2012).

At the time of the search, Carter was on parole for a prior PWID conviction. Therefore, PO Baird derived his authority to search Carter's person and property from 61 Pa.C.S. § 6153, which "specifically grants authority to parole agents to conduct personal searches and property searches of parolees without a warrant and without probable cause." *Commonwealth v. Curry*, 900 A.2d 390, 393 (Pa. Super. 2006). The statute provides, in relevant part:

> **(b) Searches and seizures authorized.**--
>
> (1) Agents may search the person and property of offenders in accordance with the provisions of this section.
>
> (2) Nothing in this section shall be construed to permit searches or seizures in violation of the Constitution of the

United States or section 8 of Article I of the Constitution of Pennsylvania.

**(c) Effect of violation.**--No violation of this section shall constitute an independent ground for suppression of evidence in any probation or parole proceeding or criminal proceeding.

**(d) Grounds for personal search of offender.**--

(1) A personal search of an offender may be conducted by an agent:

(i) if there is a reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision; …

(2) A property search may be conducted by an agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.

(3) Prior approval of a supervisor shall be obtained for a property search absent exigent circumstances. No prior approval shall be required for a personal search.

\* \* \* \*

(6) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:

(i) The observations of agents.

(ii) Information provided by others.

(iii) The activities of the offender.

(iv) Information provided by the offender.

(v) The experience of agents with the offender.

(vi) The experience of agents in similar circumstances.

> (vii) The prior criminal and supervisory history of the offender.
>
> (viii) The need to verify compliance with the conditions of supervision.

61 Pa.C.S. § 6153(b)(1)-(2), (d)(1)-(6).

Accordingly, although a parole agent may not conduct a search that would violate a parolee's constitutional rights, an agent may subject a parolee to a warrantless search if the agent has **reasonable suspicion** that the parolee possesses contraband or other evidence of a violation of the terms of his parole. *Id.* at § 6153(b)(2), (d)(1)(i). *See Curry*, *supra*, 900 A.2d at 394 ("Because 'the very assumption of the institution' of parole is that the parolee is 'more likely than the ordinary citizen to violate the law,' the agents need not have probable cause to search a parolee or his property; instead, reasonable suspicion is sufficient to authorize a search.") (citation omitted).

In the present case, the trial court determined, based on the totality of the circumstances, PO Baird had reasonable suspicion that a search of Carter's person or vehicle would yield evidence of a parole violation. The court opined:

> As part of his duties, PO Baird routinely works along with the Dauphin County Drug Task Force by riding with police officers to afford him more access to offenders, just as he did on the night of [Carter's] arrest. When PO Baird arrived at the traffic stop, he was already in possession of information that [Carter] might be involved in selling drugs as it had been relayed by [Carter's] assigned PO, Georgia Latshaw. He and Officer Bates also found out that Officer Hammer had stopped [Carter] for an illegal window tint which [Carter] also confirmed.

Once Officer Hammer concluded his encounter with [Carter], PO Baird saw an opportunity to interact with an individual who he knew was on parole. [Carter] agreed to a search of his person which yielded $140. Subsequent to searching his person, PO Baird testified he chose to go into [Carter's] car based upon his observations of him throughout the duration of the encounter and knowledge of his history. [Carter] was present in an area known for high crime and drug sales; he had a history of selling drugs, a fact voluntarily confirmed by [Carter] when asked, and he could not provide the name of the purported co-worke[r] he had dropped off in the area. Baird stated that he observed bloodshot eyes and "significant pupils" and when [Carter] asked if he was under the influence of alcohol or drugs, he merely responded that "he doesn't smoke weed" with no response regarding other drugs or alcohol. Of significance to the reasonable suspicion analysis is the fact that [Carter] was agreeable to a search of his person, but when questioned about any possible contraband in the car his demeanor quickly switched to a highly agitated state despite claiming the vehicle belonged to his mother. After asking [Carter] a second time whether the car contained anything that Baird, as a Parole Officer, should be aware of[, … Carter] responded that he didn't know. This Court finds that reasonable suspicion of a parole violation was established by the record presented by the Commonwealth at the Suppression Hearing.

Trial Court Opinion, 11/18/2014, at 14-15.

Our independent review of the record reveals the trial court's findings are supported by PO Baird's testimony at the suppression hearing. *See* *Colon*, *supra*. It merits emphasis that Carter initially **consented** to a search of his person. PO Baird explained the circumstances surrounding Carter's consent as follows:

I asked him (Carter) if he had anything else on him that he shouldn't have on him as far as weapons, drugs, things of that nature. He stated he didn't have anything on him and that I was free to search him.

N.T., 6/25/2013, at 72. Although the body search yielded nothing incriminating, we find the trial court properly determined the totality of the circumstances surrounding PO Baird's encounter with Carter supported the agent's reasonable suspicion that Carter had contraband or other evidence of a parole violation in his vehicle. These circumstances included: (1) PO Baird's observation of Carter's bloodshot eyes and "significant" pupils;[5] (2) PO Baird's knowledge that Carter's parole agent suspected he was dealing drugs; (3) Carter's sudden change in demeanor when PO Baird asked if there was contraband in the vehicle; (4) Carter's evasive answers to PO Baird's questions, including his inability to name the co-worker he claimed to have driven home, and his statement that "he doesn't smoke weed" when asked if he was under the influence of drugs or alcohol;[6] (5) Carter's presence in a high crime area; and (6) PO Baird's knowledge of Carter's history of selling drugs. *See* 61 Pa.C.S. § 6153(d)(6). Accordingly, we detect no abuse of discretion on the part of the trial court in determining that PO Baird possessed reasonable suspicion to search Carter's vehicle.

Carter also contends, however, that the search was unlawful because there were no exigent circumstances justifying the warrantless search of his vehicle. Carter states that, by the time PO Baird confronted him, he had

---

[5] N.T., 6/25/2013, at 73.

[6] *Id.*

- 10 -

been released by Officer Hammer with a verbal warning and told he was free to leave. Carter's Brief at 18. Further, Carter asserts PO Baird failed to obtain prior approval for the search from his supervisor pursuant to Section 6153(d)(3), although the agent admitted he had the ability to do so. *See Id.* at 17.

With respect to Carter's argument that no exigent circumstances existed to justify the warrantless search, we, like the trial court, rely on the definition of "exigent circumstances," found in 61 Pa.C.S. § 6151.

> "Exigent circumstances." The term includes, but is not limited to, suspicion that contraband or other evidence of violations of the conditions of supervision might be destroyed or suspicion that a weapon might be used. **Exigent circumstances always exist with respect to a vehicle**.

*Id.* (emphasis supplied). *See also* Trial Court Opinion, 11/18/2014, at 16. Accordingly, PO Baird's reasonable suspicion that Carter had contraband in his vehicle was sufficient, under the statute, to justify a warrantless search without prior approval from a supervisor.

Nevertheless, even if we were to find prior approval was required, Section 6153(c) explicitly states "[n]o violation of this section shall constitute an independent ground for suppression of evidence in any probation or parole proceeding or criminal proceeding." 61 Pa.C.S. § 6153(c). Thus, under the clear terms of the statute, evidence recovered during a warrantless search of a parolee's person or property is subject to suppression **only** if the search was conducted in violation of the parolee's constitutional rights. As we concluded *supra* that PO Baird possessed the

- 11 -

requisite reasonable suspicion to justify the search of Carter's vehicle, and, therefore, Carter's constitutional rights were not violated, he is entitled to no relief on this claim.

Next, Carter contends the verdict was against the weight of the evidence because the evidence presented by the Commonwealth demonstrated that he possessed the cocaine purely for his personal use. In support of his argument, Carter emphasizes the testimony from the suppression hearing that he asked the CI to "front" him the money for the sale because he intended to purchase drugs for his own use. Carter's Brief at 20. Moreover, he notes that no "distribution paraphernalia" was recovered from his vehicle. *Id.* Rather, the drugs were found in a single bag.[7]

> Appellate review of a weight of the evidence claim is well-established:
>
> A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice. ***Commonwealth v. Widmer***, 560 Pa. 308, 318–20, 744 A.2d 745, 751–52 (2000); ***Commonwealth v. Champney***, 574 Pa. 435, 443–44, 832 A.2d 403, 408–09 (2003). On review, an appellate court does not substitute its judgment for the finder of fact and consider the underlying question of whether the verdict is against the weight of the evidence, but, rather, determines

---

[7] We note that Carter's paraphernalia conviction was based upon his possession of the "clear plastic sandwich bag filled with crack cocaine used to store and transport illegal drugs." Police Criminal Complaint, 9/4/2012, at 4, Offense # 002. No use-paraphernalia was found on his person or in his vehicle.

only whether the trial court abused its discretion in making its determination. **Widmer**, 560 Pa. at 321–22, 744 A.2d at 753; **Champney**, 574 Pa. at 444, 832 A.2d at 408.

**Commonwealth v. Lyons**, 79 A.3d 1053, 1067 (Pa. 2013), *cert. denied*, 134 S.Ct. 1792 (2014).  Moreover, a challenge to the weight of the evidence "must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing."  **Commonwealth v. Lofton**, 57 A.3d 1270, 1273 (Pa. Super. 2012), *appeal denied*, 69 A.3d 601 (Pa. 2013) *(*citations omitted).  **See** Pa.R.Crim.P. 607.

Here, although Carter preserved his weight challenge in a post-sentence motion, he argued only that "[t]he nature and quality of the evidence and testimony presented at trial failed to establish guilt." Defendant's Post Sentence Motion, 3/25/2014, at ¶ 17.  He did not present the specific claim he now raises on appeal.  For that reason, his weight claim is waived.  **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Nevertheless, even if we were to address the issue on appeal, we would conclude he is entitled to no relief based upon the following cogent analysis provided by the trial court:

> It is well established that "[i]n Pennsylvania, the intent to deliver may be inferred from possession of a large quantity of [a] controlled substance." **Commonwealth v. Lee**, 956 A.2d 1024, 1028 (Pa. Super. 2008)[, *appeal denied*, 964 A.2d 894 (Pa. 2009)] *quoting* **Commonwealth v. Brown**, 904 A.2d 925, 931-932 (Pa. Super. 2006) (citations omitted), *appeal denied*, 591 Pa. 710, 919 A.2d 954 (2007).  The evidence adduced at trial established that when [Carter] was stopped by Officer Hammer, [he] had just left a controlled drug buy.  The evidence

- 13 -

> confiscated from his vehicle was tested by the PSP forensics lab which concluded it was 26.6 grams of crack cocaine, a very large amount of cocaine. No drug paraphernalia was found on [Carter's] person or in the car to indicate that he was personally using the cocaine. This Court weighed the significant evidence and properly inferred that [Carter] possessed the intent to deliver the illegal drugs found in the vehicle.

Trial Court Opinion, 11/18/2014, at 21. Carter has provided us with no basis upon which to conclude the trial court abused its discretion in denying his challenge to the weight of the evidence. Accordingly, even if the claim were not waived, we would find it to be meritless.

Although we have concluded that the two issues raised by Carter on appeal merit no relief, we are, nevertheless, compelled to vacate the judgment of sentence and remand for resentencing in light of the United States Supreme Court's decision in **Alleyne v. United States**, 133 S.Ct. 2151 (U.S. 2013).

In the present case, the trial court imposed a mandatory minimum sentence pursuant to 18 Pa.C.S. § 7508, a statute that has been found to be constitutionally infirm in light of the United States Supreme Court's decision in **Alleyne**, **supra**. **See Commonwealth v. Newman**, 99 A.3d 86 (Pa. Super. 2014) (*en banc*); **Commonwealth v. Vargas**, 108 A.3d 858 (Pa Super. 2014) (*en banc*) (applying **Newman** to Section 7508). Although Carter did not contest the imposition of the mandatory minimum sentence on appeal, "a challenge to a sentence premised upon **Alleyne** … implicates

the legality of the sentence and cannot be waived on appeal." **Newman**, **supra**, 99 A.3d at 90.[8]  Moreover, this Court may address the legality of a defendant's sentence *sua sponte*.  **Commonwealth v. Watley**, 81 A.3d 108, 118 (Pa. Super. 2013) (*en banc*), *appeal denied*, 95 A.3d 277 (Pa. 2014).

In **Alleyne**, the United States Supreme Court held "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be **submitted to the jury** and found **beyond a reasonable doubt**."  **Alleyne**, **supra**, 133 S.Ct. at 2155 (emphasis supplied).  Applying that mandate, this Court, sitting *en banc,* concluded that **Alleyne** rendered the mandatory minimum sentencing provision of 42 Pa.C.S. § 9712.1 unconstitutional.  **See Newman**, **supra**.  Furthermore, the **Newman** Court found the offending language of the statute, which permitted a **trial court** to determine at sentencing whether the elements necessary to increase the mandatory minimum sentence were proven beyond a **preponderance of the evidence**, invalidated the statue as a whole.  **See Id.**, 99 A.3d at 98 ("Section 9712.1 can no longer pass constitutional muster.").  The **Newman** Court also concluded, "it is manifestly the province of the General Assembly

---

[8] We note that, in **Commonwealth v. Johnson**, 93 A.3d 806 (Pa. 2014), the Pennsylvania Supreme Court granted *allocatur* to consider, *inter alia*, "[w]hether a challenge to a sentence pursuant to **Alleyne** [] implicates the legality of the sentence and is therefore non-waivable." **Id.**

to determine what new procedures must be created in order to impose mandatory minimum sentences in Pennsylvania following **Alleyne**. We cannot do so." **Id.** at 102.

Following the dictates of **Newman**, another *en banc* panel in **Vargas**, **supra**, concluded the mandatory minimum provisions set forth in Section 7508, which are structured in the same manner as Section 9712.1, are also constitutionally infirm. **Vargas, supra**, 108 A.3d at 876-877. Moreover, this Court has declined to carve out an exception when a defendant is convicted in a non-jury trial. **See Commonwealth v. Bizzel**, 107 A.3d 102 (Pa. Super. 2014) (vacating mandatory minimum sentence imposed pursuant to 18 Pa.C.S. § 6317(b) following non-jury trial as violative of **Alleyne**).

Therefore, although we conclude the claims raised by Carter on appeal are without merit, we must, nevertheless, vacate the judgment of sentence and remand for resentencing in light of the erroneous imposition of the mandatory minimum sentence pursuant to Section 7508.

Judgment of sentence vacated. Case remanded for resentencing consistent with this memorandum. Jurisdiction relinquished.

Olson, J., joins in this memorandum decision.

Bender, P.J.E., concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/22/2015