J-A14032-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TIMOTHY CURTIS RITTER, | : | |
| | : | |
| Appellant | : | No. 1632 MDA 2014 |

Appeal from the Judgment of Sentence Entered August 28, 2014
in the Court of Common Pleas of Dauphin County,
Criminal Division, at No(s): CP-22-CR-0002471-2013

BEFORE:    BENDER, P.J.E., JENKINS, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED AUGUST 21, 2015**

Timothy Curtis Ritter (Appellant) appeals from the judgment of sentence of 8½ to 17 years of imprisonment following his jury convictions for multiple drug and firearms charges.  Specifically, Appellant challenges the denial of his pre-trial suppression motion.  We affirm.

At approximately 8:00 p.m. on March 26, 2013, Officer Darrin Bates stopped for a traffic violation a van in which Appellant was a passenger.  The driver of the vehicle was Akeem Simmons, who did not have a driver's license.  Because he had run out of citation forms, Officer Bates told Simmons that he "was going to cut him a break on towing the vehicle for the night" and allow the men to leave with the vehicle if Appellant, who had a license, would drive.  N.T., 10/10/2013, at 23.

_____

*Retired Senior Judge assigned to the Superior Court.

During the traffic stop, state parole agents George Baird and George Mann joined at the scene. Agent Mann was familiar with Appellant, having knowledge of his criminal history and the fact that his term of supervision had concluded recently. Agent Baird recognized Simmons as a parolee who was being supervised by the agent who sat next to Agent Baird in the office. That agent had asked Agent Baird to make contact with Simmons if he saw Simmons out at night, as the agent knew Simmons did not have a driver's license and he believed that Simmons was selling drugs. Agent Baird was also aware that Simmons "had been arrested for possession of, like, a pound of weed and a scale" during a prior period of supervision. *Id.* at 76.

When Officer Bates informed Appellant and Simmons that they were free to leave, Simmons immediately jumped out of the van. Agent Baird called to him, and Simmons stopped to talk to the agent. Appellant also got out of the vehicle and began to walk away; Agent Baird informed Appellant that he was free to go once Agent Mann assured Agent Baird that Appellant's parole had "maxed out." *Id.* at 78. Appellant then went and stood near Officer Bates, chatting with the officers, repeatedly confirming that he was free to leave, yet remaining at the scene even when Officer Bates left.

Agent Baird asked Simmons whether he was on parole; Simmons claimed that his supervision period had terminated two days earlier. Simmons also indicated that he was born in 1982. Agent Baird called the

- 2 -

operations center and learned that Simmons was still under supervision and would be until 2016, and that he had a birth date in 1983. Simmons gave vague and evasive answers to questions about where he was coming from. Simmons also told Agent Baird that he was heading home to meet his curfew; Agent Baird noted that Simmons' residence was in the opposite direction from that in which he had been heading, and Simmons would not have had cause for concern about a curfew if his supervision had ceased as he claimed. A search of Simmons' person revealed over $1,000 in cash.

Agent Baird, observing that he had "never had anybody lie to [him] because they weren't doing anything wrong," pointed out to Simmons that he was in a high crime area at night with a large amount of cash and had given evasive answers and a story that made "zero sense," and asked for consent to search the vehicle. *Id.* at 84-85. Simmons declined, indicating that the vehicle was not his. Agent Baird informed Simmons of his belief that there was sufficient cause to search the vehicle nonetheless, and proceeded to do so. When he opened the door of the van, Agent Baird immediately smelled marijuana. After finding black jackets, gloves, and masks in the back seat, Agent Baird found a firearm, marijuana, and cocaine in the front center console.

Appellant was arrested and charged with possessory offenses for the gun and drugs. His motion to suppress the evidence seized from the van

was denied after a hearing. Thereafter, Appellant was convicted by a jury and sentenced as indicated above. Appellant timely filed a notice of appeal and complied with the trial court's order to file a concise statement of errors complained of on appeal. The trial court did not provide an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant presents one question for this Court's consideration:

> [Whether] the trial court erred in failing to suppress all evidence discovered following the unlawful seizure of Appellant and of the vehicle under Appellant's possession and control where police and parole agents did not possess reasonable suspicion to effectuate an investigatory detention, thereby violating Article 1, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution.

Appellant's Brief at 5.[1]

We consider Appellant's question mindful of the following.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and

---

[1] We note that, although Appellant was not the owner of the vehicle, he is able to challenge the search thereof and the subsequent seizures therefrom because (1) he was charged with a possessory offense, **Commonwealth v. Brown**, 64 A.3d 1101, 1107 (Pa. Super. 2013); and (2) having the owner's permission to use the van, N.T., 10/10/2013, at 39-41, Appellant had a reasonable expectation of privacy in the area searched. **Commonwealth v. Caban**, 60 A.3d 120, 127 (Pa. Super. 2012).

> may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the court[] below are subject to our plenary review.

*Commonwealth v. Perel*, 107 A.3d 185, 188 (Pa. Super. 2014) (quoting *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010)).

On appeal, Appellant does not challenge the validity of Officer Bates' initial stop and investigatory detention. Rather, he claims that Agents Baird and Mann "seized the Town and Country van from Appellant's possession and control without reasonable suspicion to believe it contained contraband or evidence of violations of Simmons's parole conditions when they approached Appellant and Simmons seconds after Officer Bates released Appellant and Simmons…." Appellant's Brief at 20.

We begin by considering whether Appellant's person was seized because he was not able to drive away in the van as soon as Officer Bates informed him he was free to leave, and whether the van was seized from Appellant's possession. Regarding the former, Appellant cites no authority for the proposition that seizure of the vehicle in which he was a passenger necessarily resulted in a seizure of his person. Officer Bates and Agent Baird testified, N.T., 10/10/2013, at 25, 78, and the suppression court believed, *id.* at 149, that Appellant was told repeatedly that he was free to leave. The

fact that he could not take the van with him did not negate his ability to leave.

As for the latter issue, the suppression court rejected Appellant's argument that he was in control of the vehicle when it was seized and searched, and made the factual finding that it was Simmons who was "in possession of and had control" of the van. N.T., 1/23/2004, at 27-28. As Officer Bates and Agent Baird both testified that Simmons had been the one driving the vehicle, N.T., 10/10/2013, at 20 and 78, the suppression court's determination that Simmons was in possession of the van is supported by the record. Accordingly, we will consider whether the van was seized and searched validly from Simmons' possession and control.[2]

"A property search may be conducted by [a state parole] agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision." 61 Pa.C.S. § 6153(d)(2). This Court has explained the rationale of this statute as follows:

> Because the very assumption of the institution of parole is that the parolee is more likely than the ordinary citizen to violate the law, the agents need not have probable cause to search a

---

[2] Indeed, Appellant acknowledges in his brief that the appropriate inquiry is whether the interactions of Simmons with Agents Baird and Mann gave rise to a valid search of the van. *See* Appellant's Brief at 25-29 (discussing search and seizure law applicable to parolees and probationers).

parolee or his property; instead, reasonable suspicion is sufficient to authorize a search. Essentially, parolees agree to endure warrantless searches based only on reasonable suspicion in exchange for their early release from prison.

***Commonwealth v. Curry***, 900 A.2d 390, 394 (Pa. Super. 2006) (internal citations, quotations, and footnote omitted).

In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. … Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

***Commonwealth v. Kemp***, 961 A.2d 1247, 1255 (Pa. Super. 2008) (*en banc*) (citations and quotation marks omitted). Our legislature has enumerated the following factors to be taken into account in determining whether an agent has reasonable suspicion:

(i)     The observations of agents.

(ii)    Information provided by others.

(iii)   The activities of the offender.

(iv)   Information provided by the offender.

(v)    The experience of agents with the offender.

(vi)   The experience of agents in similar circumstances.

(vii)  The prior criminal and supervisory history of the offender.

(viii) The need to verify compliance with the conditions of supervision.

61 Pa.C.S. § 6153(d)(6).

Appellant argues that "Agent[s] Baird and Mann lacked the requisite reasonable suspicion to seize and search the van at the time Officer Bates released Appellant and Simmons from his traffic stop investigation." Appellant's Brief at 30. We agree that the agents did not have reasonable suspicion that they would find contraband in the van from the first moment they came upon it. However, the agents did not initiate the search immediately. After having observed Simmons as the target of an investigative detention by Officer Bates in a high crime area at night, Agent Baird had the requisite suspicion to question Simmons to discover whether he had violated the conditions of his parole. *See*, *e.g.*, *Commonwealth v. Appleby*, 856 A.2d 191, 195 (Pa. Super. 2004) (noting that parole agents have the authority to arrest parolees for technical parole violations).

It was the answers that Simmons gave to Agent Baird's questions that created the further suspicion which resulted in the search. As the suppression court explained:

> [Simmons] had prior -- had been on parole for [a] marijuana charge. [Agent Baird] had information that [Simmons] may have been selling drugs. It's a high crime area. Mr. Simmons gave false information about his parole status and where he was coming from. There was a large amount of cash found…. Mr. Simmons jumped out of the vehicle quickly, as if attempting to flee.
>
> I think based on the totality of the circumstances, the parole agents had reasonable suspicion to search the vehicle;

> and upon searching the vehicle and the items they found, reason to search [Appellant].

N.T., 1/23/2014, at 27-28.

We discern no abuse of discretion or error of law in the suppression court's determination. Agent Baird had reasonable suspicion that Simmons was hiding contraband from him based upon many of the factors outlined in 61 Pa.C.S. § 6153(d)(6), namely: (i) his observation of Simmons' presence in a high crime area and attempt to flee from the van; (ii) the information about Simmons provided by the parole agent who was supervising him; (iii) Simmons' unexplained possession of a large amount of cash; (iv) the illogical explanations and evasive answers provided by Simmons; (vi) his experience that people do not lie for no reason; and (vii) Simmons' prior criminal and supervisory history of drug possession. These circumstances, viewed in the aggregate, would cause a reasonable officer to believe that Simmons possessed contraband in the van.

Appellant's remaining argument is that the court should have suppressed all evidence recovered from his person subsequent to the search of the van. However, that argument is premised upon the illegality of the van search. *See*, *e.g.*, Appellant's Brief at 16. Because we have determined that the agents' search of the van was valid, Appellant's final issue is meritless.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/21/2015</u>