J. S36045/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                              : PENNSYLVANIA
                              v.                              :
                                                              :
CARL WALLACE,                     :            No. 2353 EDA 2016
                                                              :
                    Appellant         :


Appeal from the Judgment of Sentence, June 17, 2016,
in the Court of Common Pleas of Delaware County
Criminal Division at No. CP-23-CR-0004619-2015


BEFORE:  PANELLA, J., OLSON, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JULY 07, 2017**

Carl Wallace appeals from the judgment of sentence of June 17, 2016,

following his conviction of one count of persons not to possess firearms.[1]

We affirm.

The trial court has set forth the facts of this case as follows:

> On July 23, 2015, Detective [Phillip] Nordo and
> Detective Williams of the Philadelphia Homicide Unit,
> Detective [Joseph] Houghton of the Yeadon Borough
> Police Department, and Police Officers of the
> Philadelphia Police Department and Yeadon Borough
> Police Department, arrived with a Search Warrant at
> [appellant]'s residence on 115 Norma Road, Yeadon,
> Delaware County, PA, to continue their investigation
> of a homicide that had occurred earlier that month in
> Philadelphia County.  The Philadelphia Homicide Unit
> Detectives believed that [appellant] had in his
> possession crucial information related to the

---

[1] 18 Pa.C.S.A. § 6105(a)(1).

homicide they were investigating and that that information would be found in [appellant]'s residence. During their search, [appellant], a convicted felon, admitted to having a firearm in the residence and the Police Officers found the firearm.

Earlier in July, 2015, Philadelphia Homicide Unit Detectives began investigating a shooting which occurred in Philadelphia County and which resulted in the death from gunshot wounds of an individual determined by police officers to be Steven Chestnut. On July 20, 2015, Detective [Greg] Singleton of the Philadelphia Homicide Unit spoke with Pamela Goff, the victim's wife. She stated to Detective Singleton that during an in-person conversation with [appellant] after her husband's death, [appellant] showed her a picture on his cellular phone of the individual who had allegedly arranged for her husband to be killed. Ms. Goff stated to Detective Singleton that [appellant] was also a longtime friend of her husband, the victim.

Detectives Singleton, Nordo and Williams of the Philadelphia Homicide Unit proceeded to contact [appellant] at his residence in Yeadon Borough, Delaware County, and to question him regarding the picture he had shown the victim's wife. After letting the Detectives in, [appellant] admitted that he was a friend of the victim and had indeed spoken to the victim's wife about his murder. [Appellant], however, refused to answer the Detectives' questions regarding details he knew about the victim's murder and the alleged picture he had on his cellular phone, and asked the Detectives to leave.

After the unsuccessful attempt to procure from [appellant] crucial information related to the homicide and believing that [appellant] indeed possessed that information in his residence, Philadelphia Homicide Unit Detectives requested assistance from the Yeadon Borough Police Department to secure a Search Warrant for [appellant]'s residence. The Philadelphia Homicide Unit Detectives requested to search for any and all

cellular phones and electronic devices in [appellant]'s residence that were capable of holding an electronic photograph or image, or of providing to a user access to social media, as well as other evidence related to the homicide. Detective Houghton of the Yeadon Borough Police Department provided Philadelphia Homicide Unit Detectives the Warrant they had requested.

Detective Nordo, Detective Williams, Detective Houghton, and several police officers entered [appellant]'s residence and began searching for [appellant]'s cellular phone that contained the picture of the individual [appellant] had stated to the victim's wife was involved in the victim's shooting and murder. [Appellant] permitted the Detectives and officers to enter his residence only after asking them whether they had a Search Warrant and being satisfied that they in fact did. Detectives Nordo and Williams of the Philadelphia Homicide Unit were the lead detectives in the homicide investigation, and they asked [appellant] for the location of the cellular phone that contained the picture of the individual allegedly involved in the homicide. [Appellant] refused to tell the Philadelphia Homicide Unit Detectives where his cellular phone was located.

When one of the Philadelphia Homicide Unit Detectives asked [appellant] whether there were any illegal items in the residence that could pose a danger to their safety, [appellant] admitted to having hid a firearm in one of the rooms. The Police Officers found and retrieved a loaded .40 semi-automatic black handgun. After confirming that [appellant] was a convicted felon not allowed to possess a firearm, the Yeadon Borough Police Officers placed [appellant] under arrest. Detective Houghton of the Yeadon Borough Police Department charged [appellant] with Person Not To Possess A Firearm.

Trial court opinion, 10/18/16 at 1-4 (citations to transcript omitted).

Appellant filed a pre-trial suppression motion which was denied on February 4, 2016. On April 11, 2016, appellant was found guilty of persons not to possess firearms following a stipulated non-jury trial before the Honorable George A. Pagano. On June 17, 2016, appellant was sentenced to 4½ to 10 years' imprisonment, and this timely appeal followed.[2] Appellant complied with Pa.R.A.P. 1925(b), and the trial court filed a Rule 1925(a) opinion.

Appellant has raised the following issue for this court's review, challenging the trial court's denial of his pre-trial suppression motion:

> Did the trial court err by failing to grant [appellant]'s motion to suppress physical evidence and statements made by [appellant] as required by the Fourth, Fifth, Sixth and Fourteenth Amendements [sic] of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution?

Appellant's brief at 4.[3]

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing rulings of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted

---

[2] A timely post-sentence motion was filed on June 27, 2016; however, before the trial court could rule on it, appellant filed a notice of appeal. (Trial court opinion, 10/18/16 at 5.)

[3] An additional issue raised in appellant's Rule 1925(b) statement challenging the sufficiency of the evidence to sustain the verdict has been abandoned on appeal.

> when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

***Commonwealth v. Korenkiewicz***, 743 A.2d 958, 962 (Pa.Super. 1999) (citations omitted).

Appellant argues that the search of his closet for contraband was outside the scope of the search warrant. (Appellant's brief at 9.) Appellant complains that the police did not enter his home to look for contraband prohibited by the terms of his parole; rather, by the plain terms of the search warrant, they were supposed to be looking for evidence related to Chestnut's murder, particularly any cell phones or electronic devices capable of storing a photograph or image. (***Id.***) Appellant contends that police did not have reasonable suspicion of contraband possession or a violation of the terms of his supervision and Detective Nordo's questioning was in violation of the Constitution. (***Id.***) Appellant also claims that during the search, his freedom of movement was restricted and he was not free to leave. (***Id.***) Appellant concludes that his admission to Detective Nordo and the firearm must be suppressed. We disagree.

First, appellant was not "in custody" for ***Miranda***[4] purposes, nor was he being interrogated. ***Commonwealth v. Williams***, 941 A.2d 14, 30 (Pa.Super. 2008) (***en banc***). Appellant was not a suspect in the homicide

---

[4] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

investigation and had not been charged with any crime. ***See Commonwealth v. Wholaver***, 989 A.2d 883, 896-897 (Pa. 2010) (right to counsel attaches only at or after the initiation of adversary proceedings against the defendant, and questioning the defendant about soliciting murder, a crime for which he was not arrested or arraigned, was permissible). The police believed that appellant was a possible eyewitness to Chestnut's murder and had material evidence in his possession. (Notes of testimony, 2/4/16 at 48-49.) Detective Nordo testified that they wanted to speak with appellant about the picture in his phone. (***Id.*** at 47.) They were not there to look for a gun or any other form of contraband. (***Id.***)

Second, other than asking appellant to show them where the phone was, police did not restrict appellant's freedom of movement in any significant way. The police asked appellant to sit on the living room couch during the search, but he was not secured in any way and was allowed to move around the house. (***Id.*** at 40; notes of testimony, 1/28/16 at 18.) At one point, they asked appellant to come into his bedroom to show them the location of the phone. (Notes of testimony, 1/28/16 at 19.) Appellant went into the bedroom but refused to cooperate with the search. (Notes of testimony, 2/4/16 at 41.)

Obviously, appellant was not "free to leave" in the sense that the police possessed a valid search warrant for his house. Appellant does not

contest the validity of the warrant. However, appellant was never in custody and was not being interrogated about Chestnut's murder or anything else.

Third, appellant was on state parole. It is well established that a parolee has limited Fourth Amendment rights and a diminished expectation of privacy in exchange for his early release from prison. ***Commonwealth v. Curry***, 900 A.2d 390, 394 (Pa.Super. 2006) (citations omitted).

Fourth, and most importantly, it is clear from the suppression hearing testimony that Detective Nordo's inquiry was for the purpose of ensuring officer safety during the search of appellant's residence. Detective Nordo testified,

> I said to [appellant], you are on state parole. He replied yes. I said, is there anybody else in this house? Just so we know. We're not going to come upon anybody that's going to be springing out because we do have a search warrant for the entire house. No, he replied. I says [sic] is there anything of contraband in this house that we should be aware of that parole would consider contraband? And he said, it's in the closet. And I said, what's in the closet? And he said, what I'm on parole for. And I said, I don't know what that is. What are you talking about? And he says, a gun. And they're – you're talking about a rancher [sic] type home, so it's not like there are bedrooms in rooms away. They're like yards away from where I'm standing.

Notes of testimony, 2/4/16 at 45. "And at that point, I asked him, where is this gun you're referring to in this closet? He says, I put it under the towels. I says [sic], he put it under the towels, I hollered back. And at that point, they find what they find." (***Id.*** at 46.)

Detective Singleton testified that he was searching the linen closet and overheard appellant state that there was a weapon in the house. (Notes of testimony, 1/28/16 at 15.) Detective Singleton recovered a .40 caliber firearm and a magazine loaded with .9 mm rounds from inside a shaving kit underneath some towels. (*Id.*) Detective Singleton testified, "I was glad that I was able to retrieve that gun as [appellant] was moving around and, you know, the property. I would like to have that weapon under control, yes." (*Id.* at 15-16.)

The detectives continued to search for the black cell phone and eventually found it underneath some clothing in a plastic storage container in the bedroom closet. (*Id.* at 16.) After police discovered the firearm and ammunition, appellant became more cooperative and told them where the cell phone was located. (*Id.*) Up until that point, appellant had been uncooperative. (*Id.* at 16-17.)

While Detective Nordo did ask appellant, a state parolee, about the presence of contraband, it is clear that it was in connection with executing the search and to ensure officer safety. The detectives had a valid warrant to search appellant's residence, and they were not there for purposes of uncovering parole violations. The detectives were aware that appellant was on state parole, was a material witness to a homicide, was being uncooperative with the investigation, and took at least 10 minutes to answer the front door. (*Id.* at 12.) They reasonably wanted to protect themselves

during the search. Furthermore, appellant volunteered that there was a firearm in the house; Detective Nordo had only asked about contraband generally. (**Id.** at 21-22; notes of testimony, 2/4/16 at 22-23, 29, 54.)

Finally, we agree with the Commonwealth that even if there had been a constitutional violation, which there was not, the inevitable discovery exception would apply to allow admission of the evidence. Detective Singleton would have recovered the gun from inside the shaving bag independent of appellant's admission. Police were searching for a cell phone or similar electronic device, small enough to hide in a container such as a shaving bag. In fact, Detective Singleton was already looking in the linen closet when appellant revealed that a firearm was hidden there. Appellant did not begin to cooperate and tell the officers where the cell phone was located until after they had already found the gun. Therefore, even assuming Detective Nordo's questioning of appellant was somehow improper, the evidence was admissible. **See Commonwealth v. Gonzalez**, 979 A.2d 879, 889-890 (Pa.Super. 2009) (explaining the inevitable discovery rule). For these reasons, the trial court did not err in denying appellant's suppression motion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/7/2017