COMMONWEALTH of Pennsylvania,
Appellant

v.

Wayne EDWARDS, Appellee.

Superior Court of Pennsylvania.

Argued Jan. 11, 2005.

Filed April 26, 2005.

James Barker, Asst. Dist. Atty., Harrisburg, for Com., appellant.

Royce Morris, Harrisburg, for appellee.

Before: BENDER, GANTMAN and JOHNSON, JJ.

BENDER, J.

¶ 1 This is an appeal by the Commonwealth from an order granting Appellee's motion to suppress evidence. The Commonwealth raises four issues for our consideration:

> Whether the suppression court erred in granting [Appellee's] pretrial suppression motion where it concluded that the police officer's search warrant lacked probable cause?
>
> Whether the suppression court erred in granting [Appellee's] pretrial suppression motion where it concluded that the probation officers lacked reasonable suspicion to search Edwards' home?
>
> Whether the suppression court erred in granting [Appellee's] pretrial suppression motion where it concluded that the probation officers were acting as law enforcement officers?
>
> Whether the suppression court erred in granting [Appellee's] pretrial suppression motion where it concluded that [Appellee's] statements were illegally obtained?

Commonwealth's Brief at 4. We affirm.

¶ 2 The following represents the finding of facts of the suppression court relevant to analysis of the case:

> On or about March 27, 2003, an unreliable informant provided Officer [J]ustin Anderson with information that the Defendant was not living at his approved parole address, but was rather living at an unapproved address at 357 South 18th Street in Harrisburg. On April 16, 2003, parole officer Andy Cooper received similar unreliable and unverified information that the Defendant was selling drugs again. While conducting probation checks that day, the two officers drove to the 300 block of South 18th Street to attempt to verify the tips they had received. The two officers saw the Defendant standing outside on the front steps of the unapproved residential address at 357 South 18th Street on the front steps. As the officers stopped

their car, they watched the Defendant go into the home and, within seconds, come back outside as they approached the front door. The officers had a brief discussion with the Defendant on the stoop of 357 South 18th Street, and the Defendant explained that the home belonged to someone named "Chris" and that he was just there to unlock the door for a contractor who was there to do work on the house. There was, in fact, a contractor present doing work on the front exterior of the home. The contractor told the officers that the Defendant had unlocked the front door when he arrived that day. As they spoke with the Defendant outside the home, the officers observed a pager lying just inside the front door on the floor. Neither officer ever observed the Defendant with the pager in his possession.

The officers testified that they followed the Defendant inside the home without either requesting or receiving permission from the Defendant to do so. Once inside the home, the officers observed mail lying on a coffee table in plain view bearing the Defendant's name and the unapproved address at 357 South 18th Street. The officers requested the Defendant's permission to search the house, but he refused since the home belonged to "Chris." The Defendant refused to provide Chris's last name. The officers then searched the Defendant's person and found a key ring in his pocket that contained a key for 357 South 18th Street. The officers called Officer Galkowski of the Harrisburg Police Department to provide assistance. Officer Anderson contacted Officer Dan McIntyre, a supervisor at the Dauphin County Adult Probation and Parole Office, to seek authorization to conduct a property search at the residence. Officer McIntyre authorized the search without a warrant and without consent. The two parole officers searched the house while Officer Galkowski remained in the living room with the Defendant. The parole officers found several individually wrapped pieces of crack cocaine and a bag of marijuana in a dresser in a second floor bedroom. The top dresser drawer also contained several headbands with the Defendant's alias embroidered on them, a scale, and a tray of small vials. Officer Galkowski arrested the Defendant and read him his Miranda rights, and the Defendant agreed to talk to the officer without the presence of his attorney. While under arrest at the residence, the Defendant told Officer Galkowski that he occasionally lived at 357 South 18th Street.

Based upon the evidence obtained as a result of the parole officers' search, Investigator John Evans of the Harrisburg Police Department applied for and obtained a search warrant for 357 South 18th Street. Investigator Evans searched the premises and seized the following: the mail bearing an unapproved address, an electronic scale, empty glass vials, the embroidered headbands, pictures showing the Defendant wearing the headbands, a marijuana roach, a small bag of marijuana, $90 U.S. currency, and a glass jar found in the freezer containing PCP.

Trial Court Opinion, 4/20/04, at 2–4.[1]

¶ 3 Subsequent to his arrest, Appellee filed an omnibus pretrial motion seeking

---

1. There was some conflict in testimony as to the chronology of events. Also, it appears that some of the testimony conflicted with PO Justin Anderson's filed report. We note however, that the Commonwealth has not argued that the facts found by the suppression court are not supported by the record. As such, we analyze the present case based upon the facts as presented by the suppression court.

suppression of the evidence seized pursuant to the search of the residence at 357 South 18th Street. A hearing was held on Appellee's suppression motion on February 10, 2004. On April 20, 2004, the court granted Appellee's motion and ordered the suppression of any items discovered by Dauphin County Adult Probation and Parole Officers inside the residence at 357 South 18th Street, any items discovered by Harrisburg Police Department officers during the execution of the search warrant and any statements made by Appellee at the time of or after his arrest on April 16, 2003. On May 11, 2004, the Commonwealth filed a notice of appeal from the court's order certifying that the suppression order would terminate or substantially handicap the prosecution of the within case. On May 17, 2004, the court issued an order directing the Commonwealth to file a statement of matters complained of on appeal pursuant to Pa.R.A.P.1925(b). The Commonwealth filed its statement of matters complained of on appeal on May 28, 2004, which brings us to the present juncture.

¶ 4 We believe Appellant's issues are set forth "out of order." That is, Appellant first contends that the court erred in concluding that the search warrant was not supported by probable cause. Secondly, Appellant tackles the suppression court's conclusion that the parole officers lacked reasonable suspicion to search the residence at 357 S. 18th Street. In our opinion, these issues are out of their logical order because the encounter starts with the confrontation with Appellee outside of the residence at 357 S. 18th Street and proceeds from there, first with an entrance into the residence then with a search and then with the request for a search warrant. Logically and legally speaking, if the entrance into the residence was illegal, then everything that occurred afterward is tainted with illegality.

■■■ ¶ 5 Although we ultimately conclude that the entrance into the residence at 357 S. 18th Street was illegal, we will address a matter touched upon by the Commonwealth in the first issue, as resolution of this issue is essential to the disposition in Appellee's favor. The Commonwealth contends in the argument portion of its first issue that the evidence should not have been suppressed "because [Appellee] did not prove that he had a reasonable expectation of privacy in the 357 S. 18th Street residence." Commonwealth's Brief at 11. It is true that in order for a search/seizure to be deemed unconstitutional, it is necessary that the party complaining of the search/seizure have an expectation of privacy in the property seized or the place searched that society is willing to deem reasonable and to which it will afford protection. Essentially, if there exists no reasonable expectation of privacy, then the search and seizure will not be found "unreasonable" and therefore, unconstitutional, even if probable cause was lacking or a warrant was not obtained. *Commonwealth v. Sell*, 504 Pa. 46, 470 A.2d 457 (1983). Unfortunately for the Commonwealth, we find that it has waived a challenge to the court's conclusion that Appellee had a reasonable expectation of privacy.

■■■ ¶ 6 Although the Commonwealth contests the suppression court's conclusion that Appellee had a reasonable expectation of privacy in the residence at 357 S. 18th Street, it does so in the argument for an entirely different issue, that issue being whether the search warrant lacked probable cause. The Commonwealth does not raise the issue of the reasonableness of Appellee's expectation of privacy in any of the four issues contained in the Statement

of Questions Involved.[2] More importantly, Appellant's Rule 1925 Statement, despite asserting four separate and rather specific matters complained of on appeal, is silent as to the suppression court's conclusion that Appellee had a reasonable expectation of privacy in the residence. Under *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306 (1998), the failure to include an issue in a Rule 1925 statement renders that issue waived on appeal. Given the above, we conclude that the Commonwealth has waived its challenge to the suppression court's conclusion that Appellee possessed a reasonable expectation of privacy.[3]

■ ¶ 7 Turning to the entry into the residence at 357 S. 18th Street, we conclude that the entry was illegal. However, we reach this conclusion on an analysis that differs somewhat from that set forth by the suppression court. It is likely our analysis will evoke cries of "Catch–22" from the Commonwealth. Nevertheless, we believe it is necessary.

¶ 8 The ostensible authority for the entry and search of 357 S. 18th Street derives from 61 P.S. § 331.27b(d)(2), which states:

> A property search may be conducted by any agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.

The Commonwealth contends that POs Anderson and Cooper had authority to enter the residence at 357 S. 18th Street because they had reasonable suspicion that the residence contained contraband or evidence that Appellee was in violation of his parole. We disagree. PO Anderson directed PO Cooper to drive by 357 S. 18th Street to check on a tip from two informants who had not yet proven reliable. The tips indicated that Appellee was residing at 357 S. 18th Street, an unapproved address and also that Appellee might be "dirty" again, *i.e.*, selling drugs again. Upon seeing Appellee at the address they stopped and approached him. As the POs approached the residence they observed a contractor working on the house. Appellee informed PO Anderson that he was at 357 S. 18th Street simply to assist a friend by allowing the contractor access to the residence. Upon being asked, the contractor indicated that Appellee had let him into the residence when he arrived that morning to perform his work. Given that the informants had not proven reliable in the past and that there existed a vouched-for explanation for Appellee's presence at the residence, which was completely plausible, we conclude that the PO Anderson's conclusion that Appellee was residing at 357

---

**2.** Standing alone, this would be a sufficient basis for finding waiver. *See* Pa.R.A.P. 2116(a); *Commonwealth v. Fremd*, 860 A.2d 515 (Pa.Super.2004).

**3.** This conclusion in no way means that the Commonwealth's challenge, had it been preserved, would have been found meritorious. To the contrary, the suppression court concluded that Appellee was residing at 357 S. 18th Street on at least a part-time basis. Without conceding the point that residency is necessary to establish a reasonable expectation of privacy, there is support in the record for this determination. First of all, there were the tips from the informant to the effect

that Appellee was residing at 357 S. 18th Street. Additionally, some clothing of Appellee's was found at the residence and Appellee was in possession of a key for the house. Additionally, Appellee was evidently allowed, by the individual who either rented or owned the premises, to store personal effects, including drugs, in one of the bedrooms. In *Commonwealth v. Wagner*, 486 Pa. 548, 406 A.2d 1026 (1979), our Supreme Court found that an individual who "spent a good deal of time at [a] home, including nights and weekends," had a reasonable expectation of privacy at that residence. *Id.* at 1029.

S. 18th Street was not supported, at that point in time, by reasonable suspicion but instead was merely speculation.

¶ 9 As for the presence of the pager inside the doorway, although the POs saw a pager just inside the doorway, it was entirely plausible that the pager belonged to the contractor, and not Appellee.[4] However, and more importantly, even if the POs were entitled to presume that the pager belonged to Appellee and not the contractor, espying a pager just inside the doorway in no way tended to prove that Appellee resided at that residence. Based upon what was known to the POs at that point in time, it was just as plausible that Appellee was at 357 S. 18th Street simply to allow the contractor access for a friend, as he stated, but that he possessed the pager in violation of his parole. Thus, at most, the POs were justified in seizing the pager and taking Appellee into custody for violating a condition of his parole, *i.e.*, possession of a pager. However, there was no basis to enter the residence to search for contraband or evidence of other violations. In other words, finding Appellee in violation of the pager condition of his parole did not give POs Anderson and Cooper carte blanche to search a residence which they had yet to confirm was Appellee's.

¶ 10 However, and in a related vein, even if it were argued that PO Anderson had reasonable suspicion to believe that Appellant resided at 357 S. 18th Street based upon the tips received and Appellant's presence at that location, we still believe that barring probable cause to believe that Appellant resided at 357 S. 18th Street, the entry would have been illegal. Our reasoning follows. The theo-

ry behind allowing a parole officer to search a parolee's person upon a showing of reasonable suspicion as opposed to probable cause and to enter his residence without a warrant upon reasonable suspicion rests upon the lower expectation of privacy afforded one released from prison on parole. *Commonwealth v. Hughes,* 575 Pa. 447, 836 A.2d 893 (2003). The theory further provides that release upon parole represents a contractual undertaking supported by consideration. In exchange for early release from prison, the parolee cedes away certain constitutional protections enjoyed by the populace in general. *Commonwealth v. Williams,* 547 Pa. 577, 692 A.2d 1031 (1997).

¶ 11 It should be patently clear, however, that a parolee, while free to give up certain constitutional protections, cannot cede away the constitutional rights of another. Absent an exception to the general rule, a warrantless entry into a person's residence is unconstitutional. *Hughes, supra.* 61 P.S. § 331.27b(d)(2) represents an exception to the warrant requirement. Thus, applying the above principle we can conclude that while a parolee can, in essence, waive the warrant requirement as to his residence, he certainly cannot waive the warrant requirement to another's residence. Thus, it follows logically that in order for the provisions of 61 P.S. § 331.27b(d)(2) to apply—to provide a PO with authority to make a warrantless entry into a home—it must be apparent to the parole officers that the residence being searched is in fact the residence of the parolee and not of another person.[5] Consider the ramifications if this were not held to be the

---

4. The contractor was working on the front door framing and the beeper was only about 4 feet away from the front door. N.T. Suppression Hearing, 2/10/04, at 30.

5. *See Hughes,* 836 A.2d at 900, for a discussion of the ability of a co-resident to give consent to search the residence in which he resides.

case. A PO could observe one of his parolees in violation of a term of his parole. He could then wait until the parolee enters a residence. The PO could then enter the residence under the apparent authority of § 331.27b(d)(2) and search for contraband or evidence of parole violations. If the parolee was not in fact residing at the residence, this would be a total invasion of privacy of the person(s) occupying the residence. Similarly, absent our construction of § 331.27b(d)(2), if a parolee were a weekend guest at someone's home, § 331.27b(d)(2) would provide authority to parole officers to enter the residence without a warrant if they had a reasonable suspicion that the parolee was in violation of his parole or possessed contraband.

¶ 12 In the present case, when POs Anderson and Cooper entered the residence at 357 S. 18th Street they did not yet have probable cause to believe that Appellee resided at that address. Thus, § 331.27b(d)(2) could not provide them with authority to enter the residence absent consent of someone with actual or apparent authority or absent a search warrant. If read to allow entry without consent or a warrant, § 331.27b(d)(2) would be in derogation of the constitutional rights of the residents of the address.[6] The very terms of § 331.27b indicate that the section shall not be construed to permit searches and seizures in violation of the Constitutions of the United States or Pennsylvania and it is a basic tenet of statutory construction that a statute shall, whenever possible, be interpreted to conform to the constitution. *See* 1 Pa.C.S. § 1925; *Commonwealth v. MacDonald,* 464 Pa. 435, 347 A.2d 290 (1975).

¶ 13 Based upon the above reasoning, we conclude that the entry into the residence at 357 S. 18th Street was illegal. Consequently, all evidence obtained after the entry into the residence was subject to suppression.

¶ 14 Order affirmed.

¶ 15 Judge Gantman files a dissenting opinion.

GANTMAN, J., Dissenting.

¶ 1 With all due respect, I disagree with the majority when it concludes the parole officers had no basis to enter the unapproved residence where they found Appellee. Hence, I dissent.

¶ 2 "A parolee and a probationer have limited Fourth Amendment rights because of a diminished expectation of privacy." *Commonwealth v. Williams,* 547 Pa. 577, 585, 692 A.2d 1031, 1035 (1997).

> [A parolee's] home like anyone else's, is protected by the Fourth Amendment's requirement that searches be reasonable. However, the requirement that a parole officer obtain a warrant based upon probable cause before conducting a search does not apply to a parolee because parole is a form of criminal punishment imposed after a guilty verdict and the states must have the necessary power over parolees in order to successfully administer a parole system as a controlled passageway between prison and freedom.

*Id.* (citing *Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987)). The prisoner on parole is still in the custody of the state and remains under the control of the Commonwealth until his sentence expires. *Williams, supra* at 587,

---

**6.** Even if, under these circumstances, the evidence might be subject to suppression by the actual resident of the house, § 331.27b(d)(2)

cannot be read to authorize a gross violation of a citizen's privacy and security in his abode.

692 A.2d at 1036. Our Supreme Court explained:

> [T]he parolee's signing of a parole agreement giving his parole officer permission to conduct a warrantless search does not mean either that the parole officer can conduct a search at any time or for any reason or that the parolee relinquishes his Fourth Amendment right to be free from unreasonable searches. Rather, the parolee's signature acts as acknowledgement that the parole officer has a right to conduct reasonable searches of [the parolee's] residence listed on the parole agreement without a warrant. A search will be deemed reasonable if the totality of the evidence demonstrates: (1) that the parole officer had a reasonable suspicion that the parolee had committed a parole violation, and (2) that the search was reasonably related to the parole officer's duty.

*Id.* at 588, 692 A.2d at 1036.

> The statutory authority relating to searches by county parole and probation officers based on reasonable suspicion is derived from 61 P.S. § 331.27b(d)(1)(i). Pursuant to that statute, a personal search of an offender may be conducted by any officer ... if there is a reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision. ... [T]he requirement that a parole [or probation] officer obtain a warrant based on probable cause before conducting a search does not apply.

*Commonwealth v. Moore,* 805 A.2d 616, 620 (2002).

¶ 3 In the instant case, Appellee signed a parole agreement allowing for warrantless searches of his premises. In the performance of their duties, the parole officers investigated information that Appellee was living at an unapproved residence.

Once the parole officers actually saw Appellee at the reported unapproved residential address, watched him go freely into the residence and come out quickly to talk to them, and observed a pager lying inside the house on the floor in plain view, I think the parole officers had reasonable grounds to suspect Appellee was living at that location and violating his parole. The parole officers were not obligated to accept Appellee's story at face value. *See generally Commonwealth v. Riley,* 715 A.2d 1131 (Pa.Super.1998), *appeal denied,* 558 Pa. 617, 737 A.2d 741 (1999) (reiterating that detention and limited investigation is not illegal simply because suspected criminal behavior may also be consistent with **innocent** behavior).

¶ 4 The inquiry here was whether the unapproved location was Appellee's living quarters and whether it could be subject to a parole search. Appellee's parole agreement barred his lodging at an unapproved address. That agreement also banned access to a pager or cell phone, considered to be associated with drugs. However, Pennsylvania law on parole agreements allows for parole searches of the "approved" residence.

¶ 5 Nevertheless, I conclude the parole officers has sufficient reasonable suspicion to conduct a property search of the unapproved residence under Section 331.27b(d)(2), which provides: "A property search may be conducted by any officer if there is reasonable suspicion to believe that the real or other property **in the possession of or under the control of the offender** contains contraband or other evidence of violations of the conditions of supervision." *See* 61 P.S. § 331.27b(d)(2) (emphasis added). When the officers went inside the home, they immediately saw mail in plain view and addressed to Appellee at the unapproved address. Appellee also had a key to the premises on his key

ring. This evidence coupled with the pager constituted *indicia* of the precise parole violations the officers were investigating.

¶ 6 Based on this evidence, Appellee's parole officer sought his supervisor's approval for a property search related to the specific parole violations under investigation. Once Appellee's parole officer established Appellee was residing in the unapproved address and observed drugs incident to his parole search, the parole search ceased.

¶ 7 Under the totality of the circumstances, I think the parole officer had reasonable suspicion to believe Appellee was living at that unapproved address and committing possessory parole violations; and, the officer's search was consistent with and reasonably related to his duty to confirm the violations. *See Williams, supra.* The search was not illegal simply because it revealed incriminating evidence for use in a criminal prosecution. *See id.*

¶ 8 Frankly, I do not share the "what if" concerns suggested in the majority's analysis. Parolees remain in the Commonwealth's custody until their sentences expire, and parole officers still have to meet a threshold albeit reduced requirement of reasonable suspicion. Further, nothing in the record indicates Appellee objected to the parole officers entering the home. In fact, **Appellee** had actual or apparent authority to allow it.

¶ 9 Finally, I disagree with the majority, which states: "In the present case, when POs Anderson and Cooper entered the residence at 357 S. 18th Street they did not yet have **probable cause** to believe that Appellee resided at that address." I think that standard is incorrect. Accordingly, I dissent.