J-S63010-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
BENJAMIN BROWN, JR. :
:
Appellant : No. 1793 WDA 2017

Appeal from the Judgment of Sentence July 6, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0008446-2016

BEFORE: OTT, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY OTT, J.: **FILED JANUARY 07, 2019**

Benjamin Brown, Jr., appeals from the judgment of sentence imposed

July 6, 2017, in the Allegheny County Court of Common Pleas. The trial court

sentenced Brown to an aggregate term of 11½ months, less one day, to 24

months, less one day, followed by five years' probation, after finding Brown

guilty of persons not to possess firearms, possession of controlled substances

(two counts), possession of a small amount of marijuana, and possession of

drug paraphernalia.[1]  On appeal, Brown argues (1) the trial court erred in

denying his pretrial motion to suppress evidence obtained during an unlawful

search by his probation officer, and (2) the court abused its discretion in

_____

* Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S. § 6105(a)(1), and 35 P.S. §§ 780-113(a)(16), (31) and (32),
respectively.

concluding the verdict was not against the weight of the evidence. For the reasons below, we affirm.

The facts underlying Brown's arrest and conviction are aptly summarized by the trial court as follows:

> With regard to the Suppression Hearing, the Commonwealth first called Probation Officer Robert Tutko as a witness. Officer Tutko has been employed as a Probation Officer in Allegheny County for twenty-two years. He recalled being in the area of the Hi View Gardens section of McKeesport on March 22, 2016 at approximately 1:00 p.m. Officer Tutko was there to do a compliance check on the residence of [] Brown as [Brown] was under his supervision for the last six to nine monhs. When Officer Tutko arrived at the location, he observed [] Brown and his girlfriend seated in a Ford Escape. [] Brown was in the driver's seat and when he opened the door, Officer Tutko observed a marijuana blunt laying in the center console and could smell the odor of marijuana in the air. According to Officer Tutko, [Brown] was on probation at this time and he had him step out of the vehicle and patted him down. Officer Tutko located a small bag of marijuana on his person. At that point, [] Brown became uncooperative, so Officer Tutko handcuffed him for the safety of himself and the other 5-6 probation officers present. He then explained to [] Brown that they were going to conduct a compliance check at his residence and, his girlfriend, Starkisha Thomas, escorted them into the residence of 733 Sixth Street, Apartment 318. Prior to that [] Brown stated, "There's nothing in there."
>
> Once inside the apartment, Officer Tutko observed a small baggie of crack cocaine on the kitchen counter. At that point, he contacted his supervisor, Michelle McDowell, explained what he observed, and she authorized the officers to look further in the residence for additional contraband. At that point, the compliance check became a search. Immediately off the kitchen was a dining area where male clothing and shoeboxes were located. Officer Tutko next opened a shoebox and found a firearm, currency and a bag of what appeared to be powdered cocaine. There were approximately ten shoeboxes in the room. Another probation officer located a larger bag [of] crack cocaine in another shoebox. Officer Tutko believed the crack cocaine was inside a green Crown

- 2 -

Royal bag. When [] Brown became uncooperative, the McKeesport Police were called and arrived at the scene. Once Detective Summers arrived at the scene, he was shown the items located in the shoeboxes, and took custody of the items.

Officer Tutko was shown a printout, dated February 1, 2016, which indicated that [] Brown filled out paperwork to transfer his supervision from Butler County to Allegheny County. The paperwork was handled by an intake clerk, Craig Jonas, and [] Brown's address was transferred to 733 Sixth Street, Apartment 318.

The Commonwealth next called Detective Sidney Summers to testify [regarding the drugs and firearm recovered from the apartment].

The Commonwealth then called Starkisha Thomas to the stand. She recalled being in the area of the Hi View Gardens apartments in McKeesport on the afternoon of March 22, 2016. She was with [] Brown on that date …. Ms. Thomas had an apartment in that area located at 733 Sixth Street, Apartment 318. She indicated that her children and [] Brown were staying at the apartment with her. Prior to the incident on March 22, 2016, [] Brown, after being released from the Allegheny County Jail[,] had been staying at Ms. Thomas' apartment for two or three weeks. Prior to this, the last time he was on probation, he was staying at his cousin's house on Locust Street[ while he was put back on electronic monitoring]. After [] Brown moved back to Ms. Thomas' apartment, she helped him move approximately twelve pair of Jordan sneakers shoeboxes to her residence on March 22, 2016, a few hours before probation arrive. Ms. Thomas thought there were shoes in the boxes. [] Brown also had some clothes and jackets at her residence. She picked up the boxes from his cousin's house in Locust Street and placed them along her living room wall.

Ms. Thomas last had contact with [] Brown a few months before the trial and he told her he was sorry for putting her in this situation and he admitted the stuff was his. Ms. Thomas admitted that she was actually charged with crimes based on the evidence found in her residence. She further admitted she was offered a plea deal in exchange for her testimony. Prior to the plea deal occurring, she recalled going to the McKeesport Police Station and providing a statement to them.

During cross-examination, Ms. Thomas stated she was cooperative when probation arrived, and she allowed them into her residence because to the best of her knowledge, there was nothing in her home. A few months after this incident, she decided to give a statement to the police indicating the items belonged to [] Brown.

On redirect examination, Ms. Thomas testified that the first time she tried to tell the police, specifically Detective Summers, that the stuff was not hers was when she was arrested a week or two after the incident. A month or two after that she was asked to give written statement.

Detective Summers was called again for redirect examination. He recalled Ms. Thomas coming to him to try to tell her side of the story when she was arrested and when she had her first initial preliminary [hearing]. He further testified that the information she provided, at those times, was consistent with what she told him when she gave her written statement.

Defense counsel placed a stipulation on the record that on February 20, 2016, Officer Jeremy Zuber responded to a disturbance at 1315 Locust Street. Once on scene, the officers flagged down the victim, Starkisha Thomas, who stated that her vehicle's windshield was just bricked, and she alleged that it was done by [] Brown.

\* \* \* \*

[D]efense counsel called [] Brown to the stand for purposes of the suppression hearing only. [] Brown admitted to having a relationship with Ms. Thomas but testified it ended in late February of 2016 after the incident with the brick in the windshield of her vehicle. As such, he stated he was surprised when probation said they were conducting a compliance check for him at Ms. Thomas' residence. [] Brown testified he never registered Ms. Thomas' address with probation and he remained at 1315 Locust Street even though that address was expired. On cross-examination, [] Brown indicated when the probation officers said they were going to do the compliance check at 733 [Sixth Street], he told them he didn't understand why Officer Tutko was doing the check at Ms. Thomas' residence when he didn't live there. According to [] Brown, Officer Tutko said that this was [] Brown's registered probation address and that he was doing to do a compliance check on [him] at her address. Finally, [] Brown said that he may have left a few pieces of clothing at Ms. Thomas' residence from when he lived there previously.

- 4 -

Trial Court Opinion, 5/29/2018, at 4-11 (record citations omitted).

Brown was subsequently charged with the aforementioned crimes. On April 7, 2017, he filed a pretrial motion to suppress the evidence recovered during the search of the apartment, arguing the probation officer did not have the authority to search that residence because it was not his "proper registered address with probation." Motion to Suppress, 4/7/2017, at ¶ 9. The case proceeded to a contemporaneous suppression hearing/non-jury trial conducted on April 10, 2017. The trial court denied Brown's suppression motion,[2] and then permitted counsel to present argument on the trial issues. Thereafter, the trial court found Brown guilty on all charges. On July 6, 2017, the court sentenced Brown to a term of 11½ months, less one day, to 24 months, less one day, followed by five years' probation on the charge of persons not to possess firearms.[3] Brown filed a timely post-sentence motion challenging the weight and sufficiency of the evidence, which the trial court denied on November 9, 2017. This appeal followed.[4]

Brown raises two issues on appeal. First, he contends the trial court erred in denying his pre-trial suppression motion. Brown insists Officer Tutko

_____

[2] *See* N.T., 4/10/2017, at 88-89.

[3] The court imposed no further penalty on the remaining convictions.

[4] On November 20, 2017, the trial court ordered Brown to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Brown complied with the court's directive, and after being granted an extension of time, filed a concise statement on January 5, 2018.

did not have probable cause to believe Brown lived at the Sixth Street apartment, and, even if the officer did have probable cause to believe the apartment was Brown's residence, he maintains Officer Tutko had no reasonable suspicion to conduct a search of the apartment. *See* Brown's Brief at 12-14. Second, Brown argues the verdict was contrary to the weight of the evidence because there was very little evidence linking him to the apartment. *See id.* at 15. He insists Ms. Thomas' testimony, confirming he lived there with her, was suspect since drugs were found in plain view in the home, and Officer Tutko had "previously disapproved of [him] residing at that address." *Id.*

When reviewing an order denying a defendant's pretrial motion to suppress,

> [we are] limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Boyd Chisholm*, ____ A.3d ____, ____, 2018 PA Super 291, *3 (Pa. Super. 2018) (citation omitted).

Our review of a challenge to the weight of the evidence supporting the verdict is well-settled:[5]

> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Rosser*, 135 A.3d 1077, 1090 (Pa. Super. 2016) (*en banc*) (citation omitted), *appeal denied*, 168 A.3d 1237 (Pa. 2017).

After an independent review of the record, the parties' briefs, and the relevant statutory and case law, we find the trial court properly disposed of Brown's claims in its opinion. *See* Trial Court Opinion, 5/29/2018, at 14-19 (concluding: (1) after discovering marijuana on Brown's person, the probation officers had reasonable suspicion to conduct a check of the apartment, during which they saw cocaine in plain view; (2) the officers then properly contacted a supervisor to obtain permission to conduct a full search; and (3) both Ms.

_____

[5] We note Brown properly preserved his weight claim in a post-sentence motion. *See* Pa.R.Crim.P. 607(A)(3).

Thomas' testimony, that the shoeboxes containing a gun and drugs belonged to Brown, as well as Officer Tutko's testimony, that the apartment was Brown's registered address, were credible, so that the verdict was not against the weight of the evidence). Accordingly, we rest on the trial court's well-reasoned bases.

We write only to briefly address Brown's claim that Officer Tutko did not have probable cause to believe Brown lived at the Sixth Street apartment. *See* Brown's Brief at 12. Brown relies on this Court's decision in *Commonwealth v. Edwards*, 874 A.2d 1192 (Pa. Super. 2005), where the panel explained that "to provide a [probation officer] with authority to make a warrantless entry into a home[] it must be apparent to the [probation] officers that the residence being searched is in fact the residence of the [probationer] and not of another person." *Id.* at 1197 (footnote omitted). The *Edwards* Court later concluded the officer in that case "did not yet have probable cause to believe that [the parolee] resided" at the home that was searched. *Id.* at 1198.

In the present case, Brown highlights his own testimony that he did not reside at the Sixth Street apartment with Thomas, nor did he inform Officer Tutko that he intended to do so. *See* Brown's Brief at 12. He also emphasizes Officer Tutko never observed him at the apartment from the time he was released from electronic monitoring to the date of his arrest, and on the day in question, Officer Tutko encountered him outside of the apartment in a vehicle. *See id.*

Our review of the record reveals Officer Tutko had probable cause to believe Brown was residing at the Sixth Street apartment. Officer Tutko had supervised Brown at that apartment previously. *See* N.T., 4/10/2017, at 13. However, after the February 2016, incident, when Brown had to return to electronic monitoring, the officer requested Brown find a new residence. *See id.* At that time, Brown moved to Locust Street.

Nevertheless, Officer Tutko testified that on March 7, 2016, three days before Brown was to be released from electronic monitoring, he met with Brown at the Locust Street residence, and "asked [Brown] if he was going back to stay at the apartment on Sixth Street, and [Brown] stated he was." *Id.* Officer Tutko then planned to conduct a compliance check on the date of the arrest, March 22, 2016. The fact that Brown denied having had this conversation with Officer Tutko is of no moment, as it was within "the sole province of the suppression court to weigh the credibility of witnesses." *Commonwealth v. Edwards*, 194 A.3d 625, 632 (Pa. Super. 2018) (citation omitted).

Furthermore, Officer Tutko testified that in February of 2016, when Brown transferred his supervision from Butler County to Allegheny County, Brown provided the Sixth Street apartment as his residence. Therefore, the probation database listed that address as his residence, despite the fact that, for a short period of time, Brown was under electronic monitoring at the Locust Street home. *See id.* at 23. Accordingly, we conclude Officer Tutko had

probable cause to believe Brown was residing at the Sixth Street apartment on March 22, 2018.

Because we conclude Brown is entitled to no relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  1/7/2019

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,

# PENNSYLVANIA

**COMMONWEALTH OF PENNSYLVANIA**

   **v.**

**BENJAMIN BROWN,**

    **Defendant**

**CRIMINAL DIVISION**
**No. 2016-08446**
**1793 WDA 2017**

ORIGINAL
Criminal Division
Dept. Of Court Records
Allegheny County, PA

## OPINION

**IGNELZI, J.**

## PROCEDURAL HISTORY

By Criminal Information filed at No. CC 08446-2016 on July 6, 2016, "Defendant" was charged with Persons not to Possess a Firearm-**18 Pa.C.S. 6105A1**; Possession of a Controlled Substance-2 Counts-**35 Pa. C.S. § 780-113A16**; Possession of Marijuana-**35 Pa. C.S. § 780-113 A31**; and Possession of Drug Paraphernalia-**35 Pa.C.S. § 780-113A32.** Additional charges of Conspiracy and Possesion with Intent to Deliver were dismissed at Lower Court.

On April 10, 2017, this Court conducted a Suppression Hearing contemporaneously with a Non-Jury Trial. With regard to the Motion to Suppress, the Court, after making findings of fact, DENIED the Defendant's

Motion to Suppress. Suppression Hearing and Non-Jury Trial Transcript, **TT, dated April 10, 2017, at pp.88-89.** At the conclusion of the Non-Jury Trial, the Court rendered the following verdict: As to Count 1-Possession of a Firearm Prohibited, Guilty; Count 2- Possession of a Controlled Substance, Guilty; Count 3-Possession of Marijuana, Guilty; Count 4-Use/Possession of Drug Paraphernalia, Not Guilty; and Count 5-Possession of a Controlled Substance, Guilty of a lesser charge. **TT at p. 97.** Because the guidelines were pretty high, the parties agreed that a presentence report would be appropriate. **Id.**

The sentencing occurred on July 6, 2017. Prior to imposing the sentence, the Court made the following findings:

> First, the Court agreed with the defense that Mr. Brown does not have a significant history of violence. This was his first firearm charge.
> Second, Mr. Brown spared the Commonwealth a jury trial.
> Third, there was no indication that any of the officers or probation officers were in any way, shape or form threatened with a firearm.
> Fourth, and most importantly, Mr. Brown used his time productively with the hope that he is understanding the path he's gone down up until now is not going to be the path for the rest of his life.
> And fifth, while the Commonwealth requested a minimum 3 to 6 year sentence, the recommendation of the defense, if the Court accepts it, in essence gives Mr. Brown a 3 year period of incarceration.

**Sentencing Transcript, ST, dated July 6, 2017, at pp.13-14.**

2

The Court, believing that a downward departure was appropriate, sentenced Mr. Brown as follows: As to Count 1 a period of incarceration of no less than one year less one day and no more than two years less one day. This will be a county sentence and no credit will be given for time served. Judge Cashman will determine how he wants to use it on the probation violations. The Court also imposed a five year period of probation to commence at the end of the county sentence. The Court further imposed court costs and, as to the remaining counts, no further penalty. **ST at pp. 14-15.**

On July 14, 2017, Defendant file a Post-Sentence Motion, which was denied on November 13, 2017. On November 14, 2017, Defendant filed a timely Notice of Appeal in the Superior Court of Pennsylvania. By Order dated November 20, 2017, this Court ordered Defendant to file a Statement of Errors Complained of on Appeal pursuant to **Pa. R.A.P. 1925(b).** The Concise Statement was ultimately filed on January 5, 2018.

## STATEMENT OF ERRORS ON APPEAL

The Defendant's errors complained of on appeal are as follows:

1. The Commonwealth presented insufficient evidence to support the verdict rendered. As the firearm and cocaine were not located on Mr. Brown's person, the Commonwealth needed to establish that Mr. Brown had knowledge and intent to control both of these items. *Commonwealth v. Boatwright,* 1453 A.2d 1058 (Pa. Super. 1982). The

3

Commonwealth failed to establish either of these elements beyond a reasonable doubt, as Officer Tutko was aware of one other individual residing at the residence;

2. This Court's verdict was against the weight of the evidence. The Court placed too much emphasis on the fact that Mr. Brown was previously on probation and had a history with Officer Tutko. The record revealed that Officer Tutko had no evidence that Mr. Brown actually resided in the apartment at issue: he had never seen Mr. Brown inside; had previously disapproved the residence for Mr. Brown to live in; and did not find any indicia linking Mr. Brown to the residence. **TT at pp. 20-25 & 28**; and

3. This Court improperly denied Mr. Brown's Motion to Suppress. Officers had no reason to believe that Mr. Brown was associated with the residence and Officer Tutko acknowledged that he continued the search of the apartment, per authorization from his supervisor, Michelle McDowell, without a warrant. **TT at p. 15.**

## FACTUAL HISTORY

The Suppression Hearing and Non-Jury Trial occurred on April 10, 2017.

With regard to the Suppression Hearing, the Commonwealth first called

Probation Officer Robert Tutko as a witness. Officer Tutko has been employed

as a Probation Officer in Allegheny County for twenty-two years. **TT at p. 10.**

He recalled being in the area of the Hi View Gardens section of McKeesport on

March 22, 2016 at approximately 1:00 p.m. **Id.** Officer Tutko was there to do a

compliance check on the residence of Benjamin Brown as Benjamin was under

his supervision for the last six to nine months. **Id.** When Officer Tutko arrived

at the location, he observed Mr. Brown and his girlfriend seated in a Ford

Escape. **Id. at pp. 10-11.** Mr. Brown was in the driver's seat and when he

4

opened the door, Officer Tutko observed a marijuana blunt laying in the center console and could smell the odor of marijuana in the air. **Id. at p. 11.** According to Officer Tutko, he was on probation at this time and he had him step out of the vehicle and patted him down. **Id.** Officer Tutko located a small bag of marijuana on his person. **Id. at pp. 11-12.** At that point, Mr. Brown became uncooperative, so Officer Tutko handcuffed him for the safety of himself and the other 5-6 probation officers present. **Id. at 12.** He then explained to Mr. Brown that they were going to conduct a compliance check at his residence and, his girlfriend, Starkisha Thomas, escorted them into the residence of 733 Sixth Street, Apartment 318. **Id. at 12-13.** Prior to that Mr. Brown stated, "There's nothing in there." **Id. at 14.**

Once inside the apartment, Officer Tutko observed a small baggie of crack cocaine on the kitchen counter. **Id.** At that point, he contacted his supervisor, Michelle McDowell, explained what he observed, and she authorized the officers to look further in the residence for additional contraband. **Id. at 15.** At that point, the compliance check became a search. **Id.** Immediately off the kitchen was a dining area where male clothing and shoeboxes were located. **Id.** Officer Tutko next opened a shoebox and found a firearm, currency and a bag of what appeared to be powdered cocaine. **Id.** There were approximately ten shoeboxes in the room. **Id. at 16.** Another

5

probation officer located a larger bag crack cocaine in another shoebox. **Id.** Officer Tutko believed the crack cocaine was inside a green Crown Royal bag. **Id. at 17.** When Mr. Brown became uncooperative, the McKeesport Police were called and arrived at the scene. **Id. at 17-18.** Once Detective Summers arrived at the scene, he was shown the items located in the shoeboxes, and took custody of the items. **Id. at 18.**

Officer Tutko was shown a printout, dated February 1, 2016, which indicated that Mr. Brown filled out paperwork to transfer his supervision from Butler County to Allegheny County. **Id. at 30.** The paperwork was handled by an intake clerk, Craig Jonas, and Mr. Brown's address was transferred to 733 Sixth Street, Apartment 318. **Id.**

The Commonwealth next called Detective Sidney Summers to testify. The detective is employed by the City of McKeesport Police Department as a narcotics detective and has been so employed for the past six years. **Id. at 32-33.** Detective Summers was contacted by his Assistant Chief Green indicating that probation located a large amount of narcotics inside the apartment of 733 Sixth Street. **Id. at 33.** Detective Summers spoke with the probation officers and recovered the evidence. **Id.** According to Detective Summers, one shoebox contained a firearm (which he believed was an Intratec handgun), U.S. currency and a plastic bag containing cocaine. **Id.** The second shoebox had a

6

green Crown Royal bag which contained a large amount of cocaine, and there was a separate clear plastic baggie containing cocaine inside the box. **Id. at 34.** The items were placed into evidence and sent down to the Allegheny County Crime Lab. **Id.**

The Commonwealth then called Starkisha Thomas to the stand. She recalled being in the area of the Hi View Gardens apartments in McKeesport on the afternoon of March 22, 2016. **Id. at 37.** She was with Ben Brown on that date and she identified him as being in the Courtroom during the trial. **Id. at 37-38.** Ms. Thomas had an apartment in that area located at 733 Sixth Street, Apartment 318. **Id. at 38.** She indicated that her children and Ben Brown were staying at the apartment with her. **Id.** Prior to the incident on March 22, 2016, Mr. Brown, after being released from the Allegheny County Jail had been staying at Ms. Thomas' apartment for two or three weeks. **Id. at 39-40.** Prior to this, the last time he was on probation, he was staying at his cousin's house on Locust Street. **Id. at 40.** After Mr. Brown moved back to Ms. Thomas' apartment, she helped him move approximately twelve pair of Jordan sneakers shoeboxes to her residence on March 22, 2016, a few hours before probation arrived. **Id. at 41-43.** Ms. Thomas thought there were shoes in the boxes. **Id. at 42.** Mr. Brown also had some clothes and jackets at her

7

residence. **Id.** She picked up the boxes from his cousin's house on Locust Street and placed them along her living room wall. **Id. at 43.**

Ms. Thomas last had contact with Mr. Brown a few months before the trial and he told her he was sorry for putting her in this situation and he admitted the stuff was his. **Id. at 45.** Ms. Thomas admitted that she was actually charged with crimes based on the evidence found in her residence. **Id.** She further admitted she was offered a plea deal in exchange for her testimony. **Id. at 45-46.** Prior to the plea deal occurring, she recalled going to the McKeesport Police Station and providing a statement to them. **Id. at 46.**

During cross-examination, Ms. Thomas stated she was cooperative when probation arrived, and she allowed them into her residence because to the best of her knowledge, there was nothing in her home. **Id. at 53.** A few months after this incident, she decided to give a statement to the police indicating the items belonged to Mr. Brown. **Id. at 53-54.**

On redirect examination, Ms. Thomas testified that the first time she tried to tell the police, specifically Detective Summers, that the stuff was not hers was when she was arrested a week or two after the incident. **Id. at 61.** A month or two after that she was asked to give a written statement. **Id. at 62.**

Detective Summers was called again for redirect examination. He recalled Ms. Thomas coming to him to try to tell her side of the story when she

8

was arrested and when she had her first initial preliminary. **Id. at 63.** He further testified that the information she provided, at those times, was consistent with what she told him when she gave her written statement. **Id.**

Defense counsel placed a stipulation on the record that on February 20, 2016, Officer Jeremy Zuber responded to a disturbance at 1315 Locust Street. Once on scene, the officers flagged down the victim, Starkisha Thomas, who stated that her vehicle's windshield was just bricked, and she alleged that it was done by Mr. Benjamin Brown. **TT at 46.**

The Commonwealth moved for the admission of Commonwealth Exhibit 1, a certified conviction from CC 2012-13006,where the Defendant, Benjamin Brown, pled guilty to robbery, force however slight. **Id. at 65-66.** There was also a stipulation to the crime lab reports: Report No. 1 deals with the recovered Star 9-millimeter firearm with serial number 16LABO2032, found to be in good operating condition; Report No. 2 is the report of the recovered controlled substances. Item 3-A tested positive for marijuana with a weight of 1.148 grams. Item 3-B tested positive for cocaine at a weight of 2.053 grams. Item 3-C tested positive for a cocaine base at a weight of 27.286 grams. Item 3-D also tested positive for a cocaine base with a weight of 2.656 grams. And finally, Item 3-D2 tested positive for a cocaine base at a weight of .396 grams. **TT at 65-67.**

Defense counsel then made a motion for judgment of acquittal as to all charges except the marijuana counts, alleging the Commonwealth has failed to make out a prima facie case to link Mr. Brown to the residence and he was not found in possession of any of the items. **TT at 67.** The Court indicated it has to view the evidence in the light most favorable to the Commonwealth and, as such, found sufficient evidence and denied the motion. **TT at67-68.**

Thereafter, defense counsel called Benjamin Brown to the stand for purposes of the suppression hearing only. Mr. Brown admitted to having a relationship with Ms. Thomas but testified it ended in late February of 2016 after the incident with the brick in the windshield of her vehicle. **TT at 70.** As such, he stated he was surprised when probation said they were conducting a compliance check for him at Ms. Thomas' residence. **Id.** Mr. Brown testified he never registered Ms. Thomas' address with probation and he remained at 1315 Locust Street even though that address was expired. **Id. at 71.** On cross-examination, Mr. Brown indicated when the probation officers said they were going to do the compliance check at 733, he told them he didn't understand why Officer Tutko was doing the check at Ms. Thomas' residence when he didn't live there. **Id. at 74.** According to Mr. Brown, Officer Tutko said that this was Mr. Brown's registered probation address and that he was going to do a compliance check on me at her address. **Id.** Finally, Mr. Brown said that he

10

may have left a few pieces of clothing at Ms. Thomas' residence from when he lived there previously. **Id. at 75.**

## FINDINGS OF FACT ON THE SUPPRESSION MOTION

This Court hereby incorporates by reference the Findings of Fact and Conclusions of Law in support of its denial of the Suppression Motion as set forth in the **Suppression Hearing and Non-Jury Trial Transcript, dated April 10, 2017, at p. 88, line 8 through p. 89, line 2.**

## DISCUSSION

### I

Defendant, Benjamin Brown, first challenges the sufficiency of the Commonwealth's evidence for his firearm and cocaine convictions. This claim is without merit.

In this case, the weapon and drugs were not located on Defendant's person; thus, the Commonwealth was required to establish that he constructively possessed the contraband. *Commonwealth v. Gutierrez,* 969 A.2d 584, 590 (Pa.Super. 2009) ("Possession can be found by proving actual possession, constructive possession or joint constructive possession.") (quoting *Commonwealth v. Heidler,* 741 A.2d 213, 215 (Pa.Super. 1999)); see

11

also ***Commonwealth v. Macolino,*** 503 Pa. 201, 469 A.2d 132 (1983); ***Commonwealth v. Sanes,*** 955 A.2d 369 (Pa. Super. 2008). In order to prove that a defendant had constructive possession of a prohibited item, the Commonwealth must establish that the defendant had both the ability to consciously exercise control over it as well as the intent to exercise such control. ***Sanes***, supra.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. ... We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control.... To aid application, we have held that constructive possession may be established by the totality of the circumstances.

***Commonwealth v. Cruz,*** 21 A.3d 1247, 1253 (Pa. Super. 2011).

The application of the legal principle of constructive possession often arises when contraband is found in a car or a residence. As noted, all the attendant facts and circumstances are weighed to determine whether the Commonwealth proved the defendant's ability and intent to exercise control over the articles in question. In the present case, Defendant was on probation and his probation officer was Officer Tutko. **TT at 10.** Officer Tutko credibly testified that the registered address for Defendant's probation was 733 Sixth

12

Street, Apartment 318, McKeesport, PA. **Id.** When Officer Tutko arrived at the address, he observed the Defendant and Ms. Thomas sitting in a vehicle outside the residence. When he approached the vehicle and Mr. Brown opened the car door, Officer Tutko observed a marijuana blunt in the center console and the smell of marijuana in the air. **Id. at 11.** Mr. Brown was then patted down and a small bag of marijuana was found on his person. **Id. at 11-12.** Mr. Brown then became uncooperative and was placed in handcuffs. **Id. at 12.** His girlfriend, Ms. Thomas, escorted the probation officers into her residence where the shoeboxes containing the firearm and cocaine were located. **Id. at 15-17.** Ms. Starkisha Thomas credibly testified that Mr. Brown had been living with her for the past two to three weeks **Id. at 39-40**; on March 22, 2016, he asked for her help to move shoeboxes from his Locust Street address to her address **Id. at 41-43**; she had no knowledge what was inside the shoeboxes and she thought there were shoes in them **Id. at 42 & 53**; and she gladly allowed the probation officers to conduct a compliance check of her home because, as far as she knew, there was nothing incriminating inside. **Id. at 53.** Ms. Thomas testified that a few months before the trial, Mr. Brown contacted her to say he was sorry for getting her involved and admitted the stuff was his. **Id. at 45.**

Hence, the evidence was sufficient to show that defendant had both the ability and intent to exercise control of the firearm and drugs located in the residence. This court concludes that in viewing the totality of evidence presented at trial, there was sufficient evidence to determine the defendant was the only person with conscious dominion over the contraband. It is further concluded that Mr. Brown constructively possessed the contraband found in his shoeboxes.

## II

The Defendant's second alleged error on appeal is that the trial court reached a verdict that was against the weight of the evidence presented at trial. However, this assertion offers Defendant no greater refuge than his prior claims. The determination of whether a verdict is against the weight of the evidence is governed by the following standard:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reserve the lower court's verdict if it so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003).

14

Further, a challenge tő the weight of the evidence concedes that sufficient evidence exists to sustain the verdict, but questions which evidence is to be believed. *Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa. Super. 2006). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *Commonwealth v. Widmer*, 744 A.2d 745 (Pa. 2000. When a defendant claims that a verdict is against the weight of the evidence, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the other facts, is to deny justice. *Commonwealth v. Fisher*, 47 A.3d a55, 158 (Pa. Super. 2012) *appeal denied*, 62 A.3d 378 (Pa. 2013).

All of the testimony in this case, establishes that the Defendant, as of March 22, 2016, was residing at 733 Sixth Street, Apartment 318, with his girlfriend, Starkisha Thomas. Ms. Thomas credibly testified that the shoeboxes containing the contraband belonged to the Defendant and she helped him move them into her residence the day of the incident with probation. Probation Officer Tutko had a registered address for the Defendant's probation at this same address. Accordingly, the Defendant has not been

15

denied justice. Justice was clearly served upon his convictions of person not to possess a firearm; possession of a controlled substance; and possession of marijuana.

## III

Defendant's final alleged error was that the suppression court erred in denying his Motion to Suppress as the officers had no reason to believe that Mr. Brown was associated with the residence and Officer Tutko continued the search of the apartment without a warrant. These allegations are without merit.

The probation officers discovered, in plain view, a marijuana blunt in the center console of the vehicle Defendant was sitting in, the smell of marijuana in the air, a small bag of marijuana on his person and, when escorted into the residence by Ms. Thomas, observed a small baggie of crack cocaine on the kitchen counter. **TT at 11-14.** Ms. Thomas had no concerns about letting the officers perform am compliance check of the residence she shared with her boyfriend, the defendant. **TT at 44, 53.** Defendant's possession of these items constituted violations of his probation and gave the officers reasonable suspicion to search the residence for other contraband that might be present. Given reasonable suspicion, the probation officers had

16

only to obtain permission from a supervisor to perform a search, which they did. **TT at15**. As such, the search was reasonably related to the probation officers' duties to confirm compliance with the terms of Defendant's probation, as detailed in the Regulations, and to protect the public from illegal activity.

The aim of probation and parole is to rehabilitate and reintegrate a lawbreaker into society as a law abiding citizen. *Commonwealth v. Chambers*, 55 A.3d 1208, 1212 (Pa. Super. 2012). The institution of probation and parole assumes a probationer or parolee is more likely than the ordinary citizen to violate the law. *Commonwealth v. Moore*, 805 A.2d 616, 619 (Pa. Super. 2002). Consequently, probationers and parolees have limited Fourth Amendment rights because of a diminished expectation of privacy. *Id.*

The statute governing the supervisory relationship between probation officers and probationers and the concomitant rights of probationers is provided in 42 Pa. C.S.A. §9912(a), (b)(1), (c), (d). "The policy behind Section 9912 is to assist offenders in their rehabilitation and reassimilation into the community and to protect the public." *Moore, supra* at 620. "Essentially, Section 9912 authorizes county probation officers to search a probationer's person or property, if there is a reasonable suspicion to believe the

17

probationer possesses contraband or other evidence of violations of the conditions of supervision." ***Chambers, supra*** at 1214, (citing 42 Pa. C.S.A. § 9912(d)(1)(i), (d)(2)).

> In establishing reasonable suspicion, the fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate. This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability.

***Moore, supra*** at 619-20.

Finally, a suppression court's factual findings are binding and may only be reversed "if the legal conclusions drawn therefrom are erroneous." *Commonwealth v. Rosas*, 875 A.2d 341, 346 (Pa. Super. 2005).

Using the totality of the circumstances test, this Court concluded the probation officers in this case first conducted an unannounced home visit of Defendant and his girlfriend's residence, in accordance with Defendant's probation Regulations. Their observation of contraband in plain view gave them reasonable suspicion that Defendant had additional contraband in the residence. The probation officer's search, which was conducted with prior approval from a supervisor, was consistent with and reasonably related to

Defendant's probation Regulations. Therefore, the probation officers search of the residence was proper under the facts of this case, and this Court properly DENIED the Motion to Suppress.

## CONCLUSION

Based on the foregoing, the judgment of sentence imposed by this Court should be AFFIRMED.

BY THE COURT:

DATED: 5/29/24

PHILIP A. IGNELZI    J.

19